Corynne McSherry (SBN 221504)
corynne@eff.org
Alexandra Moss (SBN 302641)
alex@eff.org
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Tel.: (415) 436-9333
Fax.: (415) 436-9993

*Counsel for Movant*
*Electronic Frontier Foundation*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **In Re DMCA Section 512(h) Subpoena to Reddit, Inc.** | Case No.: 3:19-mc-80005 SK<br><br>**ELECTRONIC FRONTIER FOUNDATION'S NOTICE OF MOTION AND MOTION TO QUASH WATCHTOWER BIBLE & TRACT SOCIETY INC.'S SUBPOENA TO REDDIT, INC. SEEKING IDENTITYIFYING INFORMATION.** |

## **NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on May 6, 20149 at 9:30 AM, or as soon thereafter as this case may be heard, the Electronic Frontier Foundation ("EFF") hereby moves to quash the Watchtower Bible and Tract Society Inc.'s ("Watchtower") subpoena to Reddit, Inc. ("Reddit").

EFF's motion is based upon this notice of motion, the following memorandum of points and authorities, any reply filed in support of this motion, all other papers filed and proceedings had in this action, oral argument of counsel, and such other matters as the Court may consider.

# TABLE OF CONTENTS

NOTICE OF MOTION……………………………………………………………....i

I.  INTRODUCTION..................................................................1

II.  STATEMENT OF FACTS ......................................................2

  A.  Doe's Need for Anonymity. ..............................................2

  B.  Watchtower's Attempt to Unmask Doe for Sharing Truthful Information about the Jehovah Witnesses' Advertising Practices and Data Privacy Policies. .................................................................3

  C.  The Harmful Effects of Forced Disclosure on Doe and Others. ...........................6

III.  ARGUMENT ...................................................................8

  A.  Watchtower Must Not Be Permitted to Use the DMCA to Identify and Thereby Silence Religious Dissenters and Critics................................8

    1.  Watchtower's Subpoena Cannot Survive the Test Required by the First Amendment.......................................................8

      a.  Watchtower's Copyright Claims Are Meritless ..........................10

      b.  The Disclosure of Doe's Identity and Status as a Dissenter Will Harm Doe and Other Current and Former Members of the Jehovah's Witness Community. .................................13

    2.  First Amendment Protections Apply to Foreign Nationals Where, As Here, a Party Seeks to Invoke U.S. Legal Process to Force a U.S. Company to Disclose Information in Connection with Communications Targeting U.S. Users ...................................16

  B.  The Subpoena Must Be Quashed To Protect Doe and Others from Reprisal Oppression, Undue Burden, Intimidation, and Harassment By Watchtower........18

IV.  CONCLUSION .................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Art of Living Found. v. Does 1-10*,
No. 10-CV-05022-LHK, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) ................. 8, 9, 10, 14

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) ........................................................................................... 12

*Doe v. 2TheMart.com Inc.*,
140 F. Supp. 2d 1088 (W.D. Wash. 2001) ...........................................................9

*Estate of Klieman v. Palestinian Authority*,
293 F.R.D. 235 (D.D.C. 2013) .............................................................................17

*Fernandez v. California Dep't of Correction & Rehab.*,
No. 2:11-CV-01125 MCE, 2014 WL 794332 (E.D. Cal. Feb. 27, 2014) ...................... 18, 19

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
No. 17-571, 2019 WL 1005829 (U.S. Mar. 4, 2019) ...........................................13

*Herbert v. Lando*,
441 U.S. 153 (1979) ...........................................................................................18

*Highfields Capital Mgmt., L.P. v. Doe*,
385 F. Supp. 2d 969 (N.D. Cal. 2005) ................................................ 9, 10, 14, 16

*In re Anonymous Online Speakers*,
661 F.3d 1168 (9th Cir. 2011) ..........................................................................8, 16

*Jacobs v. Quinones*,
No. 1:10-CV-02349-AWI-JL, 2014 WL 5426323 (E.D. Cal. Oct. 23, 2014).....................18

*Johnson v. Washington Times Corp.*,
208 F.R.D. 16 (D.D.C. 2002) .............................................................................15

*Mattel, Inc. v. Walking Mountain Prods.*,
353 F.3d 792 (9th Cir. 2003) ............................................................................11

*McIntyre v. Ohio Elections Comm'n*,
514 U.S. 334 (1995) ...........................................................................................8

*Micro Motion, Inc. v. Kane Steel Co.*,
894 F.2d 1318 (Fed.Cir.1990) ...........................................................................19

*Mireskandari v. Daily Mail & Gen. Tr. PLC*,
No. CV1202943MMMSSX, 2013 WL 12114762 (C.D. Cal. Oct. 8, 2013).....................16

*Moon v. SCP Pool Corp.*,
232 F.R.D. 633 (C.D.Cal.2005) ..........................................................................18

*New Era Publications Intern., ApS v. Carol Pub. Group,*
    904 F.2d 152 (2d Cir.1990) ......................................................................... 10

*Quantity of Copies of Books v. State of Kansas,*
    378 U.S. 205 (1964) ................................................................................... 17

*Seltzer v. Green Day, Inc.,*
    725 F.3d 1170 (9th Cir. 2013) ............................................................. 12, 13

*Signature Mgmt. Team, LLC v. Automattic, Inc.,*
    941 F. Supp. 2d 1145 (N.D. Cal. 2013) ................................................. 9, 10

*Times Newspapers Ltd. v. McDonnell Douglas Corp.,*
    387 F. Supp. 189 (C.D. Cal. 1974) ............................................................ 17

*Underwager v. Channel 9 Australia,*
    69 F.3d 361 (9th Cir. 1995) ........................................................................ 17

*United States v. 18 Packages of Magazines,*
    238 F. Supp. 846 (N.D. Cal. 1964) ............................................................ 17

*United States v. James,*
    663 F. Supp. 2d 1018 (W.D. Wash. 2009) ................................................ 17

*Watchtower Bible & Tract Soc'y of New York, Inc. v. Vill. of Stratton,*
    536 U.S. 150 (2002) ............................................................................ 3, 8, 9

**Statutes**

17 U.S.C. § 412 ............................................................................................... 13

**Other Authorities**

Will Nicol, *What is Reddit? A beginner's guide to the front page of the internet*, Digital
    Trends (published July 19, 2018) ........................................................... 3, 4

# <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.  INTRODUCTION

Movant John Doe requests that the Court quash a subpoena that, on its face, appears to be nothing more than a transparent attempt by the Watchtower Bible and Tract Society ("Watchtower") to use the Digital Millennium Copyright Act ("DMCA") to unmask an anonymous speaker. The underlying copyright claims concern two screenshots—of an advertisement and a chart—that Doe posted to an online forum where former (and questioning) Jehovah's Witnesses can communicate pseudonymously. Both postings were self-evident fair uses. In the unlikely event that Watchtower actually attempted to sue Doe, the complaint would never survive a motion to dismiss.

For Doe and others, however, any such motion would come too late. The ability to speak pseudonymously is crucial to Doe's ability to comment freely about matters that can be deeply divisive and contentious among both current and former members of the Jehovah's Witness community. Doe's lifelong experience with that community makes Doe afraid to question or doubt religious doctrine or administration in public. Doe believes that dissenting points of view are strongly discouraged in the Jehovah's Witness community, and that those who express them are likely to be labeled "apostates," and excommunicated, or "disfellowshipped" from the community. For Doe and others, who grow up and live their lives within the Jehovah's Witness community, alienation from their religious community means alienation from central social relationships with friends and family.

Doe chose Reddit to communicate because it allows users to post pseudonymously. The disclosure of Doe's identifying information to Watchtower will allow the Jehovah's Witness organization to connect Doe's real name to the posts using information they already have due to Doe's lifelong membership in the community. Already, Doe has stopped posting on Reddit and deleted numerous posts, not at issue here, to mitigate the potential risk of disclosure. If Reddit is forced to disclosed Doe's information, Doe will stop posting on Reddit altogether.

The First Amendment protects anonymous speech precisely to prevent these kinds of harms. Accordingly, a party seeking to pierce anonymity in this district must meet well-established set forth in *Highfields Capital Mgmt., L.P. v. Doe* and its progeny. Watchtower has not, and cannot, do so.

Watchtower may seek to avoid this obligation altogether by arguing that the First Amendment does not apply where, as here, the Doe is not a U.S. citizen or resident. That attempt should fail. Chilling Doe's speech deprives U.S. audiences on Reddit as well as the U.S. public as a whole of truthful information, including about potential abuses and dissenting points of view. Just as First Amendment protections for reporters apply to foreign publications that have U.S. audiences, so too should First Amendment protections for anonymity apply here. Further, disclosure will also send a chilling message to others in the community – the majority of whom appear to be located here. More broadly, having chosen to invoke U.S. law and process to force a U.S. company to take action, Watchtower (also a U.S. entity) should be required to respect U.S. free speech standards.

In the alternative, if the Court chooses not to apply the *Highfields* test, given the weakness of the underlying claims and the irreparable harm disclosure would cause, the Court can and should exercise its inherent power to quash subpoena.

## II. STATEMENT OF FACTS

### A. Doe's Need for Anonymity.

Doe is a lifelong member of the Jehovah's Witness community. Declaration of John Doe (Darkspilver) in Supp. Mot. Quash Subpoena to Reddit, Inc. Seeking Identify("Doe Decl.") ¶ 3. Many of Doe's friends and family members are Jehovah's Witnesses. *Id.* Doe cares deeply about this religious community and believes in many of its teachings, but Doe also has questions, doubts, and concerns about of the organization, including developments in its teachings and practices over recent years. *Id.* Doe does not share those concerns openly because, in Doe's

experience, community members respond to people who voice such concerns by labeling them "apostates," and excommunicating or "disfellowshipping" them. *Id.* ¶ 3. Once a person is "disfellowshipped," friends and family remaining in the community will drastically reduce or cut off normal social interactions. *Id.* Media reports from around the world report the fact and harm of disfellowshipping in the Jehovah's Witness community. *See* Moss Decl. ¶ 2, Ex A. Doe wishes to retain longstanding relationships with friends and family who remain Jehovah's Witnesses, but believes it is important for people to ask difficult questions, share truthful information, and criticize harmful doctrines or practices. Doe Decl. ¶ 5.

Accordingly, Doe sought out a platform to discuss these issues candidly without fear of disclosure and resulting alienation. *Id.* Doe specifically chose to communicate about these issues on Reddit because the platform lets people use non-identifying pseudonyms to communicate with each other. *Id.*

**B.     Watchtower's Attempt to Unmask Doe for Sharing Truthful Information about the Jehovah Witnesses' Advertising Practices and Data Privacy Policies.**

Watchtower is a non-profit corporation that assists the Governing Body of Jehovah's Witness organization. *See generally* "What is the Watchtower Bible and Tract Society?" https://www.jw.org/en/jehovahs-witnesses/faq/watchtower-society/;  *see also Watchtower Bible & Tract Soc'y of New York, Inc. v. Vill. of Stratton*, 536 U.S. 150, 153 (2002) ("Watchtower Bible and Tract Society of New York, Inc., coordinates the preaching activities of Jehovah's Witnesses throughout the United States and publishes Bibles and religious periodicals that are widely distributed.").

Reddit is a social media platform with users all over the world.  "Essentially, it's a massive collection of forums, where people can share news and content or comment on other

people's posts."[1] Each of those forums—called a "subreddit"—is an independent community that focuses on a different topic. *See id.* The name of each subreddit starts with "/r/" (the "r" refers to Reddit), followed by the part specific to that subreddit (for example, "/r/politics" is a subreddit for discussions about politics). *See id.* Reddit users subscribe to individual subreddits separately, and subreddits generally have their own rules and moderators for community discussion.

Watchtower served the subpoena at issue on Reddit on January 18, 2019 ("Subpoena"). The Subpoena seeks the identity of the Reddit user "darkspilver," who shared two images with a subreddit of users identifying as former members of the Jehovah's Witnesses, "/r/exjw." Doe was notified of the subpoena on February 7, 2019, and retained pro bono counsel on February 25, 2019. As of the date of this motion, Reddit has not complied with the subpoena and Doe understands that Reddit is meeting and conferring with Watchtower's counsel.

The first image ("the Ad") displays an advertisement from the back cover of the Watchtower magazine, a publication of the Jehovah's Witness religious organization. *See* Doe Decl., ¶ 8, Ex. A. As shown below, the ad consists almost entirely of text, including instructions for how to make online donations:

---

[1] Will Nicol, *What is Reddit? A beginner's guide to the front page of the internet*, Digital Trends, https://www.digitaltrends.com/web/what-is-reddit/ (published July 19, 2018).



*Id.*

Doe's post was intended to share truthful information and stimulate discussion regarding the organization's fundraising practices, and it did just that. Some commenters described the message as designed to encourage adherents to give money to the Jehovah's Witness organization. *Id.* Others compared this message to others the organization had conveyed in the past. *Id.* Doe believed the tone and placement of the ad—as well as the emphasis on online donations—represented a stark change from the organization's previously-espoused principles and practices. *Id.* ¶ 9.

The second image at issue ("the Chart") is a table of information about the Jehovah Witness organization's handling of personal data in compliance with a new European Union law called the General Data Protection Regulation ("GDPR"). *See* Doe Decl. ¶ 10, Ex C. The Chart describes different types of data the organization collects and processes, different types of processing activities the organization does for the different types of data, and the legal provisions

relevant to each type of data. Doe received the information in the form of an Excel file. *See id.*, Ex. D. Doe edited and re-formatted the information for readability and visual appeal (*e.g.,* by changing the formatting of the columns), took a screenshot of the revised chart, and then included that screenshot in a post on Reddit. *Id.*

Doe posted the Chart to help inform discussion about the organization's storage and handling of personal information. *Id.* ¶ 11. Doe was aware that some users identifying as former members of the Jehovah's Witnesses are concerned about the extent of personal data the organization has retained about them, and might support or undertake efforts for the organization to delete large amounts of stored data. *Id.* Doe, however, believes widespread deletion of stored data might cause unintended harm by making information accessible that might be socially valuable. *Id.* For example, Doe is aware that in Australia, such data has been helpful in prosecuting child abusers within the Jehovah's Witness community. *Id.*; *see also* Moss Decl. ¶ 3, Ex. B (describing investigation that relied on stored information about "allegations [of abuse] — which averaged one a month for 65 years and were recorded in sealed files along with the church's responses"). Doe hoped that providing truthful information about what information the Jehovah's Witness organization actually stored and how that data was processed would demystify these concerns and potentially prevent regrettable decisions about data storage. *Id.*

### C. The Harmful Effects of Forced Disclosure on Doe and Others.

Watchtower's Subpoena has already stopped the flow of truthful information online. Since learning of the Subpoena, Doe has stopped posting on the former Jehovah Witness subreddit, and has removed numerous posts, not the subject of this subpoena, that contain candid comments about the Jehovah's Witness organization, because Doe is afraid of additional harm if such posts are attributed to him if Doe's identity disclosed. *Id.* ¶ 12. If Watchtower succeeds in unmasking Doe's identity on Reddit, Doe's silencing will become permanent. *Id.*

Compounding the harm of preventing Doe from discussing matters of religious doctrine and governance freely, Doe fears that disclosure will negatively impact, and possibly destroy, relationships with friends and family members who are still active members of the Jehovah's Witness community. *Id.* If Watchtower receives Doe's email address or name, the organization will likely be able to match that information to Doe's membership information it has on file. *Id.* Doe fears that identification as a participant on a subreddit for "former" Jehovah's Witnesses will lead current Jehovah's Witnesses to disregard, distance themselves, or shun Doe entirely. *Id.* ¶¶ 4-5 & 12. As discussed above, these fears are based on Doe's experience as a lifelong member of the Jehovah's Witnesses, and substantiated by media reports. *See supra* at 3:4-5; Moss Decl. ¶ 2, Ex. A.

Doe is not a resident of the United States. Doe Decl. ¶ 6. However, Watchtower's subpoena invokes U.S. process to force a U.S. company to disclose personally identifying information in connection with communications that primarily targeted U.S. users. The subpoena is directed to Reddit, Inc., a U.S. company based in San Francisco, CA.[2] The post at issue was shared with a subreddit that includes other former Jehovah's Witnesses and is available to users around the world, including in this country. According to an informal survey posted on the subreddit, a substantial number of its participants describe themselves as residing in the U.S. *See* Doe Decl. ¶ 6 (discussing https://www.zeemaps.com/map?group=1671590#). Because the Jehovah's Witness organization is international, Doe believes it is important for members of the community from different countries to communicate with each other. *Id.* ¶ 6. For example, the Chart describes the organization's compliance with European data privacy law, but in so doing, describes the types of personal data the organization is likely to have on members in the U.S., who participate in the same activities as members of their religion abroad.

---

[2] *See* https://www.bloomberg.com/profiles/companies/0893288D:US-reddit-inc. (listing company address as 520 3rd. Street, San Francisco, CA 94107).

Motion to Quash                                                      Case No: 3:19-mc-80005 SK

# III. ARGUMENT

## A. Watchtower Must Not Be Permitted to Use the DMCA to Identify and Thereby Silence Religious Dissenters and Critics.

### 1. Watchtower's Subpoena Cannot Survive the Test Required by the First Amendment

The First Amendment protects the right to anonymous speech. *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *3 (N.D. Cal. Nov. 9, 2011) ("It is well established that the First Amendment protects the right to anonymous speech.") (citing *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 342 (1995)); *In re Anonymous Online Speakers*, 661 F.3d 1168, 1172–73 (9th Cir. 2011) ("It is now settled that 'an author's decision to remain anonymous . . . is an aspect of the freedom of speech protected by the First Amendment.").

The Ninth Circuit has made clear that the right to speak anonymously applies in full force to online platforms. *See id.,* 661 F.3d at 1168 ("[O]nline speech stands on the same footing as other speech."). Like the ability to speak anonymously in pamphlets at the time of the nation's founding, today "the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation . . . [or] concern about social ostracism.'" *In re Anonymous Online Speakers,* 661 F.3d at 1168 (citation omitted).

Ironically enough, the right to anonymous speech is rooted, in part, in Supreme Court precedents involving door-to-door pamphleteering by Jehovah's Witnesses. *See generally Watchtower Bible & Tract Soc'y of New York, Inc. v. Vill. of Stratton*, 536 U.S. 150, 162 (2002) (requirement that door-to-door advocates display permits with their real names on demand violated the First Amendment). Although the Jehovah's Witnesses in *Watchtower* did not object to the loss of anonymity, the Court overturned the ordinance based partly on its "consider[ation of] the impact of this ordinance on the free speech rights of individuals who are deterred from speaking because the registration provision would require them to forgo their right to speak

anonymously." *Id.* at 166 n.19. In considering the effects of the ordinance on anonymous speech, the Court explained that "'[t]he evils to be prevented [by the First Amendment] were not the censorship of the press merely, but any action of the government by means of which it might prevent such free and general discussion of public matters as seems absolutely essential to prepare the people for an intelligent exercise of their rights as citizens.'" *Id.* at 167 (quoting *Grosjean v. Am. Press Co.*, 297 U.S. 233, 249-50).

Given the First Amendment's protection for anonymous speech, courts have repeatedly quashed civil discovery subpoenas that coud not satisfy First Amendment scrutiny. *See, e.g., Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 980 (N.D. Cal. 2005) (recommending that court quash subpoena to Yahoo! that sought to identify anonymous poster accused of trademark infringement, defamation, and unfair competition); *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *6 (N.D. Cal. Nov. 9, 2011) (granting motion to quash subpoena that sought to identify anonymous poster accused of copyright infringement under *Highfields* test); *see also Doe v. 2TheMart.com Inc.,* 140 F. Supp. 2d 1088, 1093 (W.D. Wash. 2001) (granting motion to quash subpoena seeking identifying information about in shareholder derivative suit based on First Amendment, and explaining that "discovery requests seeking to identify anonymous Internet users must be subjected to careful scrutiny by the courts"). *Cf. Signature Mgmt. Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145, 1150 (N.D. Cal. 2013) (applying *Highfields* and *Art of Living* test to DMCA subpoena seeking to identify poster of entire copyrighted textbook, and denying motion to quash because plaintiff had sufficiently supported copyright claim).

In *Highfields*, this Court explained why the First Amendment authorizes motions to quash subpoenas that seek to unmask anonymous speakers on matters of public concern: "What [Doe] seeks to protect through his motion to quash is the right to express most effectively and anonymously, without fear of expensive adverse consequences, his views about matters in which

many other members of the public are interested." *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 974–75 (N.D. Cal. 2005).

Specifically, courts in this district apply a two-part test that (1) requires the party seeking disclosure to "produce competent evidence supporting a finding of each fact that is essential to a given cause of action;" and, if the party makes a sufficient showing, (2) requires courts to "compare the magnitude of the harms that would be caused to the competing interests by a ruling in favor of the plaintiff and by a ruling in favor of the defendant." *Art of Living Found.*, 2011 WL 5444622, at *3 (citing *Highfields*, at 975–76); *see also Signature*, 941 F. Supp. 2d at 1156-58.

Even if Watchtower could satisfy the first part of the test, it cannot meet the second. Any harm to Watchtower is minimal at best, because its copyright claims are meritless. By contrast, the harm to Doe caused by disclosure would be irreparable.

### a.     Watchtower's Copyright Claims Are Meritless

Watchtower appears to have registered the publication containing the Ad, which is normally enough to establish a prima facie case for ownership. Doe has been unable to find evidence of registration for the Chart.

If Watchtower is able to establish ownership for both items, its infringement claims would still fail because both posting are lawful fair uses. The doctrine of fair use "allows the public to use copyrighted works 'for purposes such as criticism, comment, news reporting, teaching ... and scholarship.'" *Art of Living Found.*, 2011 WL 5444622, at *6 (quoting 17 U.S.C. § 107). For example, the court in *Art of Living* considered the doctrine likely applicable where the blogger "appear[ed] to have published the [protected materials] ... as part of a larger effort to" criticize the party seeking disclosure, specifically by "debunk[ing] the notion that the Art of Living Foundation and Ravi Shankar possess some 'secret higher knowledge.'" *Id.*; *see also New Era Publications Intern., ApS v. Carol Pub. Group,* 904 F.2d 152 (2d Cir.1990) (the use of

---

Motion to Quash                                                      Case No: 3:19-mc-80005 SK

copyrighted quotations in a biography of Church of Scientology founder L. Ron. Hubbard was protected fair use where the intended purpose of the work was to show that "Hubbard was a charlatan and the Church a dangerous cult").

Whether a given use is a lawful fair use depends on four factors, weighed together in light of the fundamental purpose of copyright. The first factor considers the purpose and character of the use, including whether it is commercial or for nonprofit educational purposes. *See Mattel, Inc. v. Walking Mountain Prods*., 353 F.3d 792, 800 (9th Cir. 2003) (artist's transformative photos of barbie dolls constituted fair use rather than infringement).

In this case, both posts serve new and different purposes. The first posting, the Ad, was originally intended to raise money for the organization. Doe, by contrast, posted it on Reddit in order to spark further commentary regarding the organization's solicitation strategy – which it did. Moreover, there is no evidence that Doe had any conceivable commercial purpose. The Chart, appears to have been originally created to summarize the Jehovah's Witness organization's storage and handling of personal data in connection with obligations of a new European data privacy rule. Doe's reformatted version, by contrast, was intended to give subreddit members truthful information about the type of data the Jehovah's Witness organization stores, and how it handles that information, to assuage potentially misguided concerns, and thus help encourage the preservation of information that might be useful in the future to reveal or punish past abuse.

The second factor considers the nature of the copyrighted work: whether it is more or less creative, and whether it has already been published. Courts applying this factor "recognize[] that creative works are 'closer to the core of intended copyright protection' than informational and functional works." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 803 (9th Cir. 2003) (citing *Dr. Seuss,* 109 F.3d at 1402 (quoting *Campbell,* 510 U.S. at 586, 114 S. Ct. 1164)). Here, while the Ad may have been minimally creative (it consists largely of white text on a blue

background), it has long since been widely published. Doe Decl. ¶ 8 (explaining that ad was on back cover of magazine dated November 2018). In fact, the Ad is available, for free, online from Watchtower. *See id.* (referencing https://www.jw.org/en/publications/magazines). The Ad's publication weighs in favor of Doe's use being fair: "Published works are more likely to qualify as fair use because the first appearance of the artist's expression has already occurred." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1178 (9th Cir. 2013) (citing *Kelly,* 336 F.3d at 820). The fact that Watchtower "controlled the 'first public appearance' of [its] work," *id.,* militates further in favor of fair use here.

As for the Chart, it simply describes the organization's handling of different types of personal data pursuant to the GDPR. Factual information about an organization's compliance with privacy law (including citations to relevant legal provisions) is not protected by copyright. To the extent anything about the Chart could be copyrightable, it would be changes Doe made to the data in transforming it from an Excel file into a visually appealing and comprehensible image.

The third factor considers how much of the original work was taken, in light of the user's purpose. *See id.* Here, Doe reproduced the Ad and Chart in their entirety, as was necessary for Doe's information and critical purpose. However, the extent of reproduction "will not weigh against an alleged infringer, even when he copies the whole work, if he takes no more than is necessary for his intended use." *Seltzer v. Green Day, Inc.,* 725 F.3d 1170, 1178 (9th Cir. 2013) (copying of entire *Scream Icon* qualified as fair use); *see also Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586–87 (1994) ("we recognize that the extent of permissible copying varies with the purpose and character of the use"). Doe used the entire Ad because the entire contents of the Ad are relevant to Doe's purpose: The placement of the Ad on the back page, the directness of the request, and the encouragement of online donations, in Doe's view, contrast strikingly with the organization's past teachings and practices. Doe used all of the information in the Chart

because Doe was hoping to show *all* the information the Jehovah's Witness organization stored. Doe could not have used any less of the Ad or the Chart to convey the same or equivalent information to others.

The fourth factor considers market harm and favors fair use where, as here, "the allegedly infringing use does not substitute for the original and serves a 'different market function.'" *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1179 (9th Cir. 2013) (citations omitted). Neither the Ad nor the Chart have any independent value in any actual licensing market or any that is likely to develop. Because the Ad is available for free online, Watchtower is unlikely to succeed in licensing it. Because the Chart describes legal compliance information, it is hard to imagine how Watchtower could even attempt to license it. Moreover where, as here, the purpose of the use is transformative, the burden shifts to the copyright owner to show harm. *See id.* (fourth factor weighed in favor of fair sue where plaintiff provided no information to substantiate claims of market harm). Watchtower has not and cannot meet that burden.

> **b.**  **The Disclosure of Doe's Identity and Status as a Dissenter Will Harm Doe and Other Current and Former Members of the Jehovah's Witness Community.**

Quashing the subpoena would cause Watchtower little harm. Even if Watchtower could prevail against Doe's fair use defense – which it would not – its damages claim would be minimal. While Watchtower may seek statutory damages, under the circumstances a court would be unlikely to award it much more than statutory minimum ($750). And it appears that Watchtower failed to register its copyright in the Chart, precluding statutory damages for that work. *See Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 891 (2019) (holding that copyright owners must register works with the Copyright Office before suing for infringement, and recognizing that, "if infringement occurs before a copyright owner applies for registration, that owner may eventually recover damages for the past infringement as well as the infringer's profits" rather than statutory damages); *see also* 17 U.S.C. § 412(1) ("no award of

statutory damages or attorney's fees . . . shall be made for . . . any infringement of copyright in an unpublished work commenced before the effective date of its registration"). Given that the allegedly copyright material included in Doe's post has already been taken offline and has never generated any revenue for Doe (or anyone of which Doe is aware), Watchtower would be hard-pressed to claim actual damage.

By contrast, forced disclosure of Doe's identity will cause overwhelming harm to Doe and others. *Art of Living* provides clear guidance here. In that case, the plaintiff sought identifying information about a blogger who had published copyrighted materials "as part of a larger effort to debunk the notion that the Art of Living Foundation and Ravi Shankar possess some 'secret higher knowledge.'" 2011 WL 5444622 at *6. Given the critical nature of the blogger's comments in relation to such "political, religious, or literary" material, the court recognized that disclosure would have a chilling effect on the blogger as well as others. *See id.* That meant "disclosure of the [blogger's] identity could deter other critics from exercising their First Amendment rights." *Id.* (citing *Highfields*, 385 F. Supp.2d at 980–81 ("When word gets out that the price tag of effective sardonic speech [includes disclosure of the speaker's identity], that speech likely will disappear.")). Taking these factors into account, and recognizing that the post at issue was a likely fair use, the court quashed the subpoena.

In this case, Doe re-posted an advertisement along with critical commentary about the advertiser—a powerful religious organization with adherents around the world, including in this country—as well as factual information about the organization's policies with respect to personal information. Both posts contain truthful information about a matter of public concern—the administration of an insular religious organization. As such, Doe's posts are indistinguishable from those in the *Art of Living*, as is Watchtower's attempt to use the subpoena process to unmask an online speaker.

If anything, the harms of disclosure here are even more oppressive. Because Doe's participation in the subreddit community of "former" Jehovah's Witnesses is currently unknown to others in the Jehovah's Witness community, disclosure in this case will also reveal Doe's religious views and concerns with aspects of the religion's doctrines and recent practices. Thus Doe's post implicates the First Amendment's protection for free religious exercise as well as free speech:"[f]ear of the consequences of the disclosure of one's religious affiliation may be palpable and real at a certain point in history. There is, therefore, . . . implicit in the First Amendment's guarantee of religious freedom, the right to choose whether or not to disclose one's religious affiliation lest forced disclosure inhibit the free exercise of one's faith." *Johnson v. Washington Times Corp.,* 208 F.R.D. 16, 17 (D.D.C. 2002).

If Doe's participation in a community of ex-Jehovah's Witnesses is made public, Doe may be treated as an apostate and disparaged, disregarded, or shunned by friends and family members who remain in the Jehovah's Witness community. Doe's social isolation from current and former members of the Jehovah's Witness community will be at that point be complete. The emotional harm to Doe will be overwhelming.

Doe's fears of reprisal are well-founded. Other individuals who have left the Jehovah's Witnesses have attested to the harm that comes from "disfellowshipping"—the alienation and shunning by current members of the Jehovah's Witness organization that they experience when they disaffiliate. *See* Moss Decl. ¶ 2, Ex. A, These accounts describe the physical and mental suffering that ex-adherents feel their close friends and families shun them in accordance with explicit and implicit pressures that those who remain active members of the religious community will likely feel. *See id.*

Thus, before Doe ever has an opportunity to present defenses on the merits of Watchtower' claim, Doe will already have lost what matters more: the right to communicate freely without impairing personal relationships with those who remain believers.

Discovery, including the DMCA's rapid-fire subpoena process, is supposed to provide the parties with information they need for litigation, not to impose extrajudicial penalties. Watchtower's subpoena should be quashed.

### 2. First Amendment Protections Apply to Foreign Nationals Where, As Here, a Party Seeks to Invoke U.S. Legal Process to Force a U.S. Company to Disclose Information in Connection with Communications Targeting U.S. Users

Doe anticipates that Watchtower will try to argue that *Highfields Capital* and *Art of Living* should not apply to this motion because Doe is a foreign national. Watchtower is wrong, for at least three reasons.

*First*, those cases do not suggest that the First Amendment only applies to attempts to unmask online speakers when those speakers are citizens of or physically present in this country. Indeed, in situations involving small numbers of speakers, a test tied to residence could threaten the ability of U.S. citizens to engage in anonymous speech by forcing them to disclose their nationality or location, and thus imperil their anonymity in order to save it. Indeed, focusing exclusively on this country's geographic relationship to the anonymous speaker would conflict with the Ninth Circuit's conclusion that "the *nature of the speech* should be a driving force in choosing a standard by which to balance the rights of anonymous speakers in discovery disputes." *In re Anonymous Online Speakers*, 661 F.3d 1168, 1177 (9th Cir. 2011) (citing *Perry*, 591 F.3d at 1160–61; *Doe v. Reed*, 561 U.S. 186 (2010) (emphasis added). The public significance of Doe's speech and chilling effects of the court-ordered discovery Watchtower is seeking make this Court's consideration of the First Amendment essential.

*Second*, the underlying claims in this case concern information of interest to, and posted for, a group comprised primarily of U.S. readers. Courts in analogous contexts have recognized that people like Doe, who use U.S. platforms to communicate with U.S. and international audiences, can invoke First Amendment protections. *See, e.g. Mireskandari v. Daily Mail & Gen. Tr. PLC*, No. CV1202943MMMSSX, 2013 WL 12114762, at *6 (C.D. Cal. Oct. 8, 2013)

(holding that allegedly defamatory statements published abroad were subject to First Amendment protections); *see also e.g.*, *Estate of Klieman v. Palestinian Authority*, 293 F.R.D. 235, 241 (D.D.C. 2013) (reporter's privilege applied to subpoena for documents related to a documentary produced in the United Kingdom); *Times Newspapers Ltd. v. McDonnell Douglas Corp.*, 387 F. Supp. 189, 192 (C.D. Cal. 1974) (holding that a British newspaper was entitled to invoke First Amendment to seek access to deposition transcripts); *United States v. James*, 663 F. Supp. 2d 1018, 1020 (W.D. Wash. 2009) (holding that a foreign media organization had a right of access to court documents under the First Amendment).

As these cases suggest, impinging free speech protections for foreign speakers may undermine the free exchange of ideas here in the US as well. As a court in this very district observed (rejecting the government's attempt to rely on the foreign source of allegedly obscene publications to justify their seizure without judicial review),

> Even if it be conceded, *arguendo,* that the 'foreign press' is not a direct beneficiary of the Amendment, the concession gains nought for the [party making it] in this case. *The First Amendment does protect the public of this country. . . . The First Amendment surely was designed to protect the rights of readers and distributors of publications no less than those of writers or printers.* . .The rights of readers are not to be curtailed because of the geographical origin of printed materials.

*United States v. 18 Packages of Magazines,* 238 F. Supp. 846, 847-48 (N.D. Cal. 1964) (emphasis added); *see also Quantity of Copies of Books v. State of Kansas,* 378 U.S. 205, 213 (1964) (recognizing "the right of the public in a free society to unobstructed circulation of nonobscene" publications); *Bursey*, 466 F.2d at 1083 (larger purpose of First Amendment protections for freedom of the press "was to protect public access to information.").

*Third*, and most broadly, Watchtower is a U.S. organization relying on U.S. copyright law and legal process to force a U.S. company to disclose the identity of the poster. *See Underwager v. Channel 9 Australia*, 69 F.3d 361, 365 (9th Cir. 1995) (applying First Amendment protections to a foreign defamation defendant where the plaintiff sought "to use our

courts to deny the privilege of free speech to a visitor to the United States, legally within the country."). Having been asked to bless this subpoena, the Court should require Watchtower to ensure that it meets this district's well-established standard for piercing anonymous speech.

**B.    The Subpoena Must Be Quashed To Protect Doe and Others from Reprisal Oppression, Undue Burden, Intimidation, and Harassment By Watchtower**

In addition to and independent of First Amendment protections, courts have a duty to quash a subpoena that subjects any person to annoyance or oppression. "Rule 45(c)(3)(A) provides that a court *must* quash or modify a subpoena that . . . subjects a person to undue burden." *Jacobs v. Quinones*, No. 1:10-CV-02349-AWI-JL, 2014 WL 5426323, at *1 (E.D. Cal. Oct. 23, 2014) (emphasis in original). As the Supreme Court put it, "district courts should not neglect their power to restrict discovery where 'justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Herbert v. Lando*, 441 U.S. 153, 177, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979) (quoting Rule 26(c)). It should do so here.

To determine whether they should exercise that power, courts balance the burden the request imposes, the relevance of the information sought, the breadth of the request, and the litigant's need for the information. *Id.* The relevance and need for discovery must be analyzed in light of the claims themselves. *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D.Cal.2005) ("Although irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash ."); *Fernandez v. California Dep't of Correction & Rehab.*, No. 2:11-CV-01125 MCE, 2014 WL 794332, at *2 (E.D. Cal. Feb. 27, 2014) (citing *id.*). Watchtower cannot establish a true need for the information because (1) the merits of the copyright claims can be determined from the face of the postings; and (2) on that same basis, it is clear that the claims would fail because the posts were lawful fair uses.

Moreover, "[e]ven if relevant, discovery is not permitted . . . where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." *Micro Motion, Inc. v. Kane Steel Co.,* 894 F.2d 1318, 1323 (Fed.Cir.1990) (emphasis omitted); *see also Fernandez*, 2014 WL 794332, at *2 ("The court must limit discovery when the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.") (citing Fed. R. Civ. P. 26(b)(2)(C)(iii)).

Here, Doe faces embarrassment, reputational harm, damage to longstanding and ongoing personal relationships, and the risk of exclusion from Doe's lifelong religious community. These concerns are based on Doe's firsthand experience in the Jehovah's Witness community. They are reflected in Doe's decision to communicate about these issues only anonymously on Reddit, and to stop communicating even there since they learned of this subpoena. *See* Doe Decl. ¶¶ 4-5 & 12. And they are substantiated by media reports of such exclusion resulting from disfellowship of dissenting and disaffiliated Jehovah's Witnesses. *See* Moss Decl. ¶ 2, Ex. A.

Given the manifestly pretextual nature of Watchtower's claims, this Court should not allow Doe to suffer these harms. As discussed above, *see supra* at 10:15-13:15, Watchtower's subpoena involves material that is likely not copyrightable at all (*e.g.,* the ad's instructions on how to make online donations and the chart's legal citations), but even it were, would not be infringed by the posts at issue because they were fair uses for purposes of critical commentary and public education. Doe's use was not commercial, and did not cause any harm cognizable under copyright law, let alone any that could justify the severe harm that forced disclosure would impose on Doe and all who would benefit from access to Doe's speech.

## IV.   CONCLUSION

For the foregoing reasons, Doe respectfully requests the Court grant the motion to quash Watchtower's subpoena.

Dated: March 26, 2019                         Respectfully submitted,


By:     *Alexandra H. Moss*
        Alexandra H. Moss


Alexandra H. Moss (SBN 302641)
alex@eff.org
Corynne McSherry (SBN 221504)
corynne@eff.org
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA  94109
Tel.:  (415) 436-9333
Fax.: (415) 436-9993

Attorneys for Movant
*Electronic Frontier Foundation*