UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE DMCA SUBPOENA TO REDDIT, INC., | Case No. 19-mc-80005-SK<br><br>**ORDER REGARDING MOTION TO QUASH SUBPOENA**<br><br>Regarding Docket No. 8 |

Now before the Court is a motion to quash filed by John Doe under his pseudonym, Darkspilver ("Darkspilver"). Having carefully considered the parties' papers, relevant legal authority, and the record in the case, and having had the benefit of oral argument, the Court hereby GRANTS IN PART and DENIES IN PART Darkspilver's motion to quash for the reasons set forth below.

## BACKGROUND

On January 9, 2019, Petitioner Watch Tower Bible & Tract Society of Pennsylvania ("Watch Tower") filed this action to request that the Court issue a subpoena pursuant to the Digital Millennium Copyright Act ("DMCA") to Reddit, Inc. to discovery the identity of Darkspilver (the pseudonym used by someone who posted on Reddit). On January 16, 2019, the Clerk issued the subpoena. Watch Tower served the subpoena on Reddit on January 24, 2010. (Dkt. 12 (Declaration of Paul D. Polidoro), ¶ 11.) Reddit has not yet provided Darkspilver's identity and filed a document stating that it joins in Darkspilver's motion to quash.

Darkspilver was raised as a Jehovah's Witness and has been a member of that community his[1] whole life. (Dkt. 8-1 (Declaration of John Doe (Darkspilver)), ¶ 3.) Many of Darkspilver's

---

[1] It unknown whether Darkspilver is male or female, but Darkspilver has chosen the male

friends and family members are currently active Jehovah's Witnesses, and Darkspilver considers himself a practicing Jehovah's Witness. (*Id*.)

Darkspilver states that there are aspects of the organization of Jehovah's Witnesses' teachings and practices that he questions and that he does not feel as though he can openly discuss his views with other members of the community. (*Id*., ¶ 4.) He states that different opinions and questions are strongly discouraged. (*Id*.)

Darkspilver states that, in his experience, people who voice their disagreement or doubts "face rejection [by] and disapproval" from other members of the Jehovah's Witness community, including leadership and ordinary members. (*Id*.) Those who openly disagree with the organization's teachings publicly may be labelled "apostates" and be "excommunicated" or "disfellowshipped" from the community. (*Id*.) Other Jehovah's Witnesses, including friends and family members, cut off ordinary social interactions with people who have been disfellowshipped. (*Id*.) Darkspilver has personal knowledge of people who, after voicing certain opinions, have been shunned by Jehovah's Witnesses, including people with whom they had close relationships. (*Id*.)

Reddit is a social media platform where people can post to different forums. Reddit allows people to use pseudonyms to communicate. For the past few years, Darkspilver has participated in a Reddit forum for self-described former Jehovah's Witnesses. (*Id*., ¶ 5.) Although Darkspilver does not consider himself a "former" member, he believes that it is the only place he has been able to discuss and debate matters related to the Jehovah's Witnesses freely and openly. (*Id*.) Darkspilver also chose Reddit because of his ability to communicate anonymously on the site. (*Id*.) Darkspilver states that keeping his name and identity private is necessary for him to feel comfortable participating in open discussions about religious teachings and practice. (*Id*.)

Darkspilver does not live in the United States. (*Id*., ¶ 6.) According to a map made by participants in the Jehovah's Witness forum, many of the participants reside in the United States. (*Id*, ¶ 6; Dkt. 12, ¶ 9; Dkt. 12-4 (Ex. D (2,869 subscribers contributed to the map; 1,944 of those subscribers reside in the United States).) Watch Tower states that, as of April 9, 2019, there were

---

*nom de plume* of John Doe. Thus, the Court will use male pronouns in this Order in referring to Darkspilver.

2

"34.1 thousand reported subscribers" to the Reddit forum, which is an increase from the approximately 29,000 subscribers in November 2018 before Watch Tower issued the subpoena regarding Darkspilver. (Dkt. 12, ¶¶ 6, 8.) Watch Tower issued notices of copyright infringement under the DMCA to Darkspilver and to one other subscriber to the Reddit forum. (*Id*., ¶ 6.)

On February 7, 2019, Reddit informed Darkspilver of Watch Tower's subpoena for Darkspilver's identifying information based on two of Darkspilver's anonymous posts in the Reddit forum: (1) an advertisement and (2) a chart. (Dkt. 8-1, ¶¶ 7, 8.) Watch Tower states that both of these items are copyrighted works. (Dkt. 12, ¶ 2.) The advertisement, which was published in a Watchtower magazine, encourages people to make donations to the Jehovah's Witnesses and directs readers to make donations through the website donate.jw.org. (Dkt. 8-1, ¶ 8; Dkt. 8-2 (Ex. A).) Darkspilver states that, to his knowledge, both the Watchtower magazine and the advertisement are available for free online. (Dkt. 8-1, ¶ 8.) Watch Tower published this advertisement on line at JW.ORG and on the back cover of the 32-page November 2018 issue of The Watchtower – Announcing Jehovah's Kingdom. (Dkt. 12, ¶ 2; *see also* https://www.jw.org/en/publications/magazines/watchtower-study-november-2018.) Darkspilver's stated that his reason for posting the advertisement on the Reddit forum was:

> to show how openly the organization was petitioning for financial donations from members, to illustrate the organization's use of commercial advertising design, and to point out the organization's encouragement of online donations.  All of these represented major changes from the teachings and practices the organization had . . . espoused in the past. [Darkspilver] wanted to inform others and spark discussion about the organization's tone, message, and fundraising practices.

(Dkt. 8-1, ¶ 9.) Darkspilver did not make any money by posting the advertisement on the forum. (*Id*.)

Darkspilver also posted a screenshot of a chart with information about the personal data the Jehovah's Witness organization stores and processes along with citations to relevant provisions of a European Union data privacy law called the General Data Protection Regulation. (*Id*., ¶ 10; Dkt. 8-4 (Ex. C).) The chart was an internal document that Watch Tower did not intend to publicly distribute. (Dkt. 12, ¶ 2.) Darkspilver created this image by using data in an Excel file that he re-

formatted to make it more visually appealing and easy to read on a screen.  The Excel file that Darkspilver used to create this image is attached as Exhibit D to his declaration. (Dkt. 8-1, ¶ 10; Dkt. 8-5 (Ex. D).)  Darkspilver's stated that his reason for posting the chart on the Reddit forum was "to provide information to people in the Jehovah's Witness community about the type of information the organization actually stores and what it does with that information." (Dkt. 8-1, ¶ 11.)  Darkspilver is "aware of concerns that some former Jehovah's Witnesses have with respect to data the organization collects and stores," including "records of the number of hours individual Witnesses spend doing direct evangelical outreach" and "internal handling of many issues, including abuse allegations." (*Id*.)  Darkspilver concludes: "Although some people are concerned about data in the organization's possession, I am concerned about excessive deletion of stored information, largely because it might include information about past abuses (or the handling of past abuses) that might be helpful in the future for discovering or substantiating claims." (*Id*.)

Darkspilver has serious concerns about Watch Tower obtaining his identity.  He believes that it would chill his speech and would damage or destroy his relationships with friends and family who remain active members of the Jehovah's Witness community. (*Id*., ¶ 12.)  Darkspilver believes that Watch Tower would be able to use information from Reddit to determine his real identity based on the information the Jehovah's Witnesses have collected about him, including his name and address. (*Id*.)  Darkspilver explains that he has been part of the Jehovah's Witness community his whole life, and so the pain of social exclusion would be overwhelming.  Additionally, if his identity is revealed, Darkspilver would not feel comfortable talking about his experience openly online. (*Id*.)  Darkspilver would not have shared truthful information or commentary regarding the Jehovah's Witness organization if he knew that his name would be revealed. (*Id*.)  Darkspilver has already stopped posting on the former Jehovah's Witness Reddit forum and, if his identity is disclosed, he will not begin again. (*Id*.)

In support of his motion, Darkspilver also submits newspaper articles recounting stories from former Jehovah's Witnesses who were shunned or disfellowshipped from the religion. (Dkt. 8-6 (Declaration of Alexandra Moss); Dkt. 8-7 (Ex. A).)

Watch Tower submits messages from subscribers to the Reddit forum after Darkspilver

filed this motion to quash the subpoena. (Dkt. 12, ¶ 7; Dkt. 12-1 (Ex. A).) Some subscribers posted messages stating that their speech would not be chilled by Watch Tower's efforts to obtain the identity of people they accuse of copyright infringement, but it is unclear if those users are, like Darkspilver, current members of the Jehovah's Witnesses. (Dkt. 12-2 (Ex. B).)

Watch Tower is not Darkspilver's local church and does not have the ability to excommunicate him from his local congregation. (Dkt. 12, ¶ 10.) Watch Tower states that no person who has been the subject of a DMCA subpoena has been excommunicated from his or her local church as a result of Watch Tower's learning his or her identity and that Watch Tower has not disclosed to the public the names of individuals who were the subjects of DMCA subpoenas. (*Id.*)

## ANALYSIS

Watch Tower contends that the advertisement and the chart are protected by copyright and that Darkspilver infringed Watch Tower's copyright by posting them. Darkspilver counters that his identity is protected by the First Amendment right to free speech and that his posting of these items were non-infringing fair use.

**A.    Motion Is Not Untimely.**

Watch Tower argues that the Court should reject Darkspilver's motion as untimely. However, the authority upon which Watch Tower relies applies to parties. Darkspilver is not a party to a lawsuit and was not even the recipient to of the subpoena. According to Watch Tower, Darkspilver should have moved to quash before the return date on the subpoena – February 15, 2019. But Darkspilver did not even have notice of the subpoena until after that date, on February 22, 2019. Moreover, it is undisputed that Reddit has not yet responded to the subpoena. Therefore, the Court finds that the motion is not untimely and will address the merits of Darkspilver's motion to quash.

**B.    Whether the First Amendment Applies.**

Watch Tower disputes that Darkspilver's speech is entitled to any protection under the First Amendment. According to Watch Tower, because Darkspilver resides outside of the United States, applying the First Amendment to his speech would be impermissible as an extraterritorial

5

application of American law. For support, Watch Tower cites two cases evaluating different constitutional provisions – the Fourth and the Fifth Amendments. *See Johnson v. Eistrager*, 339 U.S. 763 (1950) (Fifth Amendment); *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990) (Fourth Amendment).

In *Johnson*, the Supreme Court held that military prisoners captured abroad were not entitled to protection under the Fifth Amendment because they were: (a) enemy aliens; (b) had never been or resided in the United States; (c) were captured outside of the United States and held in military custody as war prisoners; and (d) were tried and convicted by a Military Commission sitting outside the United States for war crimes committed abroad. *Johnson*, 339 U.S. at 777. Under those circumstances, the Supreme Court rejected the exterritorial application of the Fifth Amendment. *Id*. at 784.

In *United States v. Verdugo-Urquidez*, the Supreme Court noted the nature of the Fourth Amendment: "It prohibits 'unreasonable searches and seizures' . . . and a violation of the Amendment is 'fully accomplished' at the time of an unreasonable governmental intrusion. . . . [T]herefore, if there were a constitutional violation, it occurred solely in Mexico." *Verdugo-Urquidez*, 494 U.S. at 264 (internal citations omitted). In that case, the Court rejected the exterritorial application of the Fourth Amendment to a search conducted in Mexico of a Mexican resident and citizen's homes. *Id*. at 262, 274-75.

In contrast, here, the constitutional right at stake is a different constitutional amendment – the First Amendment – and the asserted violation does not concern merely extraterritorial conduct. The subpoena here was issued by a Court in the United States, on behalf of a United States company (Watch Tower) and was directed against another United States company (Reddit).

Moreover, the First Amendment protects the audience as well as the speaker. *See Desai v. Hersh*, 719 F. Supp. 670, 676 (N.D. Ill. 1989) ("The first amendment shields the actions of speakers for the benefit of their audience.). As another court in this District explained:

> The First Amendment does protect the public of this country. As Mr. Justice Brennan pointed out in *A Quantity of Copies of Books v. State of Kansas*, *supra*, there is a '*right of the public* in a free society to unobstructed circulation of nonobscenebooks' (emphasis added). The First Amendment surely was designed to protect the rights of

> readers and distributors of publications no less than those of writers or printers. Indeed, the essence of the First Amendment right to freedom of the press is not so much the right to print as it is the right to read. The rights of readers are not to be curtailed because of the geographical origin of printed materials.

*United States v. 18 Packages of Magazines*, 238 F. Supp. 846, 847-48 (N.D. Cal. 1964). In other words, the protections of the First Amendment extend beyond the personal rights of the speaker. *Bursey v. United States*, 466 F.2d 1059, 1083-84 (9th Cir. 1972). As the Ninth Circuit explained:

> The First Amendment interests in this case are not confined to the personal rights of [Plaintiffs]. . . . Freedom of the press was not guaranteed solely to shield persons engaged in newspaper work from unwarranted governmental harassment. The larger purpose was to protect public access to information. Freedom of association was secured not only to protect the privacy of those who assert their rights in litigation, but also to shelter all persons from unjustifiable governmental prying into their associations with lawful groups. In the context of litigation, vindication of these public rights secured by the First Amendment is primarily committed to persons who are also asserting their individual constitutional rights.

*Id*.

Although the exact percentage of subscribers to Reddit forum who live in United States is unknown, the only data before the Court suggests that a substantial number are United States residents. (Dkt. 8-1, ¶ 6; Dkt. 12, ¶ 9; Dkt. 12-4 (map showing that more than two-thirds of the subscribers who provided their information reside in the United States) Based on the involvement of the United States Court's procedures by and against United States companies and the audience of United States residents, as well as the broad nature of the First Amendment's protections, the Court finds that the First Amendment is applicable here.

**C.     Determining the First Amendment Test.**

"It is well established that the First Amendment protects the right to anonymous speech." *Art of Living Found. v. Does 1-10*, 2011 WL 5444622, at *3 (N.D. Cal. Nov. 9, 2011) (citing *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 342 (1995) ("An author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom protected by the First Amendment"). Moreover, the protection for anonymous speech applies to speech on the internet. *In re Anonymous Online Speakers*, 661 F.3d 1168, 1172-73 (9th Cir. 2011) ("[O]nline speech stands on the same footing as other speech –

7

there is 'no basis for qualifying the level of First Amendment scrutiny that should be applied' to online speech.") (quoting *Reno v. Am. Civil Liberties Union,* 521 U.S. 844, 870 (1997)). "As with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without "fear of economic or official retaliation ... [or] concern about social ostracism." *Id*. (quoting *McIntyre*, 514 U.S. at 341-42).

"The right to speak, whether anonymously or otherwise, is not unlimited, however, and the degree of scrutiny varies depending on the circumstances and the type of speech at issue." *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011). "[T]he nature of the speech should be the driving force in choosing a standard by which to balance the rights of anonymous speakers in discovery disputes." *Id*. at 1177; *see also Signature Mgmt. Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145, 1154 (N.D. Cal. 2013) (noting that courts begin "by considering the nature of the speech before determining the appropriate standard").

Courts apply a rigorous or "most exacting" standard when the speech is political, religious, or literary. In contrast, commercial speech is afforded less protection. *In re Anonymous Online Speakers*, 661 F.3d at 1177. Where, as here, the speech touches on a matter of public interest, courts in this district have applied a stronger standard than if the speech were commercial. *See Highfields Capital Management, L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005); *see also Art of Living Found. v. Does 1-10*, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

In *Highfields*, the speech at issue was postings of "sardonic commentary on a public corporation; through irony and parody, these bulletin board postings express[ed] dissatisfaction with the performance of the stock and the way company executives choose to spend company resources." *Highfields*, 385 F. Supp. 2d at 975. The speech also expressed disapproval or criticism of the corporation's largest single shareholder. *Id*. The speech expressed "views in which other members of the public may well be interested" and that the speaker had the right to express anonymously. *Id*. The court noted speaker's rights to speak anonymously on these topics were vulnerable and precarious and "close to the central societal values that animate our Constitution." *Id*.

In *Art of Living Foundation*, the speakers were former students and teachers of the organization, Art of Living Foundation, who anonymously criticized the organization and its leader on an internet blog. *Id.*, 2011 WL 544622 at * 1. The court cited an opinion from the California Court of Appeal for the proposition that "although matters of public interest include legislative and governmental activities, they may also include activities that involve private persons and entities, especially when a large, powerful organization may impact the lives of many individuals." *Id.*, 2011 WL 544622 at * 6 (quoting *Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 649 (1996) (allegations that the Church of Scientology harmed and abused its members was speech in connection with a "public issue")). Considering that the organization had chapters in 140 countries and was one of the United Nations' largest volunteer-based non-governmental organizations, the court held that the speakers' condemnation of the organization was clearly a matter of public interest. *Id.*, 2011 WL 544622 at * 6.

Here, Darkspilver anonymously posted to the Reddit forum to comment on and foster thoughtful and critical dialogue on the practices of Jehovah's Witnesses. The Court finds that Darkspilver's speech was a matter of public interest. Therefore, the Court will apply the following two-part test articulated in *Highfields* and *Art of Public Living*:

> (1) The [subpoenaing party] must produce competent evidence supporting a finding of each fact that is essential to a given cause of action; and (2) if the [subpoenaing party] makes a sufficient evidentiary showing, the court must compare the magnitude of the harms that would be caused to the competing interests by a ruling in favor of the [subpoenaing party] and by a ruling in favor of the [anonymous speaker].

*Art of Living Found*, 2011 WL 5444622, at *7 (citing *Highfields*, 385 F. Supp. 2d at 975-76).

**D.    Evaluating Darkspilver's First Amendment Challenge.**

    **1.    Evidentiary Basis for Watch Tower's Copyright Claims.**

As the court in *Highfields* explained, under this prong of the test:

> the plaintiff must adduce *competent evidence* – and the evidence plaintiff adduces must address *all* of the inferences of fact that plaintiff would need to prove in order to prevail under at least one of the causes of action plaintiff asserts. In other words, the evidence that plaintiff adduces must, if unrebutted, tend to support a finding of *each* fact that is essential to a given cause of action. The court may not

9

>enforce the subpoena if, under plaintiff's showing, any *essential* fact or finding lacks the requisite evidentiary support.

*Highfields*, 385 F. Supp. 2d at 975-76 (emphasis in original).

To establish a *prima facie* case of copyright infringement, a plaintiff must show (1) ownership of a valid copyright, and (2) violation by the alleged infringer of at least one of the exclusive rights granted to copyright owners by the Copyright Act. *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1178 (9th Cir. 2011). Watch Tower argues that it laid out a *prima facie* case of copyright infringement in its subpoena application. (Dkt. 11 (Watch Tower's Opp.) at pp. 13-14.) However, the application does not actually address the registration of any copyright or otherwise show that either the advertisement or the chart is a copyright protected work. The application simply states that that Darkspilver's posts infringe a copyright held by Watch Tower and cite to the declaration of Paul D. Polidoro in support of the subpoena application. (Dkt. 1 (Subpoena Application) at p.1.) The declaration does not address the copyright protections of either the advertisement or the chart. (Dkt. 2 (Declaration of Paul D. Polidoro in Support of Subpoena Application).) In the declaration in support of its opposition to the motion to quash, Mr. Polidoro states that "Watch Tower is the copyright owner of the both" the advertisement and the chart. (Dkt. 12, ¶ 2.) This brief statement is the full extent of Watch Tower's evidence in support of its claim that it owns a valid copyright in the record before the Court.

### a. Advertisement

Darkspilver does not contest that Watch Tower registered the publication in which the advertisement was included and thus does not contest copyright ownership for the advertisement. (Dkt. 8 (Mot. to Quash) at p. 10.) "A certificate of registration from the U.S. Copyright Office raises the presumption of copyright validity and ownership." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 988 (9th Cir. 2017). Therefore, for purposes of this motion, the Court will assume that the advertisement is part of a registered work.

Moreover, Darkspilver does not contest that he posted copies of the advertisement on the Reddit forum. Therefore, the Court finds that Watch Tower has demonstrated a *prima facie* case of copyright infringement for the advertisement. Darkspilver argues that Watch Tower has not made a sufficient showing because his posting of the advertisement fell under the doctrine of fair

10

1  use. However, Darkspilver bears the burden to prove the defense of fair use. Therefore, Watch
2  Tower does not need to counter this defense in order to demonstrate a *prima facie* case of
3  copyright infringement.[2] Therefore, the Court finds that Watch Tower has met its showing under
4  the first prong as to the advertisement.

### b. Chart

It is not clear that the chart meets the minimum standards of originality required for copyright protection. Watch Tower has not yet registered the chart. Therefore, the chart is not entitled to a presumption of copyright validity and Watch Tower must submit evidence to make the requisite showing.

In *Victor Lalli Enterprises, Inc. v. Big Red Apple, Inc.*, 936 F.2d 671, 673 (2d Cir. 1991), the court held that a chart did not merit copyright protection because it was merely a compilation of preexisting facts. Although a compilation of preexisting facts could meet the minimum for copyright protection if it features original selection, coordination or arrangement of those facts, the court found that the plaintiff's compilation failed to meet this minimum requirement. "Although novelty is not required, some 'modicum of creativity' is necessary to transform simple compilation into copyrightable expression." *Id*. (quoting *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340 (1991)). The court held that the charts were not entitled to copyright protection because the format of the charts lacked selectivity in what was reported and in how it was reported. *Id*.

Here, Watch Tower summarily argues that "the layout, design, and word choice [of the chart] are all creative in nature," with no supporting evidence. In the absence of any supporting evidence, the Court finds that Watch Tower has not met its burden to show, with competent evidence, its ownership of a valid copyright in the chart. Therefore, Watch Tower fails to demonstrate a *prima facie* case of copyright infringement with respect to the chart.

/ / /

---

[2] Although fair use is not a traditional "*affirmative* defense," the "burden of proving fair use is always on the putative infringer." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1153 (9th Cir. 2016) (emphasis in original) (quoting *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1542 n. 22 (11th Cir. 1996)).

### 2. Balancing of Harms.

Because the Court finds that Watch Tower demonstrates a *prima facie* case of copyright infringement with respect to the advertisement, the Court will address the second prong – comparing the magnitude of the harms that would be caused to the competing interests by a ruling in favor of Watch Tower and by a ruling in favor of Darkspilver.

Darkspilver presents evidence to show that revealing his identity to Watch Tower would chill his speech on the Reddit forum. He selected that forum because it was a place where he could communicate anonymously with other current and former Jehovah's Witnesses. (Dkt. 8-1, ¶ 5.) He is concerned that, if Watch Tower discovers his identity, the revelation of his identity would damage or destroy his relationships with friends and family who are active members of the Jehovah's Witness community. (*Id*., ¶ 12.) Speaking anonymously is necessary for him to feel comfortable participating in open discussions about religious teachings and practice. (*Id*., ¶ 5.) Darkspilver has already stopped posting on the Reddit forum and will not begin again if his identity is revealed. (*Id*., ¶ 12.)

Watch Tower disputes Darkspilver's assertion that his free speech will be chilled by citing to statements made by other individuals posting on the Reddit forum stating that they would not be deterred from speaking and by the fact that the size of the forum has grown since Watch Tower issued the subpoena. (Dkt. 12-2.) Considering that this is a forum for former Jehovah's Witnesses – people who have already left the religion and, presumably, the community – it is not surprising that some expressed that they would not be deterred from speaking if their identities were revealed. But select quotes from others do not undermine *Darkspilver's* expressed concern over speaking openly about *his* views on Jehovah Witness' practices. Moreover, to the extent other current Jehovah's Witnesses are publishing anonymous posts on this Reddit forum, they also might have concerns similar to Darkspilver.

Watch Tower further argues that Watch Tower is not Darkspilver's local church and has no ability to excommunicate him from his local congregation. (Polidoro Decl., ¶ 10.) Nevertheless, Darkspilver has expressed substantial concerns over having his identity revealed to anyone in the Jehovah's Witness community. The Court finds that Darkspilver has demonstrated significant

harms if his identity were revealed publicly or even if it were revealed to Jehovah's Witnesses in his congregation.

On the other hand, if Watch Tower cannot determine Darkspilver's identity, Watch Tower would lose its ability to enforce its copyright.  However, in evaluating the balance of the harms, the Court finds that it should address Darkspilver's defense of fair use.  As the Ninth Circuit has made clear, although Darkspilver bears the burden of demonstrating fair use, "for purposes of the DMCA – fair use is uniquely situated in copyright law so as to be treated differently than traditional affirmative defenses. . . . [F]air use is 'authorized by law[.]'" *Lenz*, 815 F.3d at 1153; *see also id*. at 1151 ("Fair use is not just excused by the law, it is wholly authorized by the law.")  Moreover, because fair use is a non-infringing use authorized by statute, a copyright holder must consider the existence of fair use before issuing a takedown notification under the DMCA, which is required before obtaining a subpoena.  *Id*. at 1153; *see also* 17 U.S.C. §§ 512(c)(3)(A), 512(h)(4).  If Darkspilver's posting of the advertisement was fair use, then it was not infringing and Watch Tower suffered no harm.

Moreover, the fair use doctrine is also relevant because Darkspilver is asserting a First Amendment right to comment on the advertisement.  As the court in *Art of Public Living* explained, while copyright infringement is not protected by the First Amendment, "copyright law contains built-in First Amendment accommodations."  *Id*., 2011 WL 5444622, at *6 (quoting *Eldred v. Ashcroft*, 537 U.S. 186, 219-20 (2003)).  Of those protections or accommodations of the First Amendment, "[p]erhaps the most important is the doctrine of fair use, which allows the public to use copyrighted works 'for purposes such as criticism, comment, news reporting, teaching . . . and scholarship.'"  *Id*., 2011 WL 5444622, at *6 (quoting 17 U.S.C. § 107) (citing *Elvis Presley Enters. v. Passport Video*, 349 F.3d 622, 626 (9th Cir. 2003) ("First Amendment concerns in copyright cases are subsumed within the fair use inquiry."); *see also Nihon Keizai Shimbun v. Comline Bus. Data, Inc.*, 166 F.3d 65, 74 (2d Cir. 1999) ("First Amendment concerns are protected by and coextensive with the fair use doctrine.").

"The fair use exception excludes from copyright restrictions certain works, such as those that criticize and comment on another work."  *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d

13

792, 799 (9th Cir. 2003) (citing 17 U.S.C. § 107). To determine whether a work constitutes fair use, courts "engage in a case-by-case analysis and a flexible balancing of relevant factors." *Id*. at 800. The four factors are:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Mattel*, 353 F.3d at 800 (citations omitted). The factors are "to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell v. Acuff–Rose Music, Inc.,* 510 U.S. 569, 578 (1994). "[F]air use is a mixed question of fact and law." *Mattel*, 353 F.3d at 800 (citation omitted).

### a. Purpose and Character of Use.

The first factor considers the purpose for using the work. "Section 107 provides that use of copyrighted materials for "purposes such as criticism, . . . scholarship, or research, is not an infringement of copyright." *New Era Publications Int'l, ApS v. Carol Pub. Grp.*, 904 F.2d 152, 156 (2d Cir. 1990) (finding factor one favored the accused infringer who declared his reasons for including the copyrighted material were to "mak[e] his point that Hubbard was a charlatan and the Church was a dangerous cult"); *see also Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 799 (9th Cir. 2003) ("The fair use exception excludes from copyright restrictions certain works, such as those that criticize and comment on another work.") (citing 17 U.S.C. § 107). This factor considers whether the use was transformative, that is, whether it "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994); *see also SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1278 (9th Cir. 2013) ("The central inquiry under the first factor is whether the new work is 'transformative.'").

Although not conclusive, the first factor also requires that "the commercial or nonprofit character of an activity" be weighed in any fair use decision. *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 448-49 (1984). Noncommercial, nonprofit activity is

14

presumptively fair. *Id*. at 449.

Here, Darkspilver's use was not commercial. Therefore, his use was presumptively fair. Moreover, his stated purpose was to evoke conversation about the Jehovah's Witnesses fundraising methods. He wanted "to show openly the organization was petitioning for financial donations from members, to illustrate the organization's use of commercial advertising design, and to point out the organization's encouragement of online donations." (Dkt. 8-1, ¶ 9.) According to Darkspilver, these fundraising methods were a major change from the teachings and practices the Jehovah's Witnesses had espoused in the past. (*Id*.) He posted the advertisement to "inform others and spark discussion about the organization's tone, message, and fundraising practices." (*Id*.) Watch Tower does not challenge this motivation. Posting copyrighted material for criticism or to spark conversation about it are purposes that the fair use statute authorizes.

On the other hand, Darkspilver did not alter or strongly "transform" the advertisement. He posted it in full with the caption: ""WHAT GIFT CAN WE GIVE TO JEHOVAH?"... guess what? ... WT Magazine NOVEMEBER 2018, Full Backpage 'Advert'" (Dkt. 8-1, ¶ 8; Dkt. 8-3 (Ex. B).) There is no factual dispute about the posting. However, because of the nonprofit nature of Darkspilver's posting and his stated purpose to evoke conversation, the Court finds that this factor weighs in favor of Darkspilver.

### b. Nature of the Copyrighted Work.

The second factor "recognizes that creative works are 'closer to the core of intended copyright protection' than informational and functional works." *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1402 (9th Cir. 1997) (quoting *Campbell*, 510 U.S. at 586).

"Whether or not a work is published is critical to its nature under factor two, the scope of fair use is broader for published works." *New Era Publications*, 904 F.2d at 157 (citing *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 564 (1985)). Thus, "even substantial quotations might qualify as fair use in a review of a published work." *Harper & Row*, 471 U.S. at 564.

Here, the advertisement was published in November 2018. Moreover, the advertisement

was largely informational and functional, directing readers how to make donations online. Therefore, this factor also weighs in favor of Darkspilver.

### c. Amount and Substantiality of Portion Used.

The third factor "asks whether the amount and substantiality of the portion used in relation to the copyrighted work as a whole, are reasonable in relation to the purpose of copying." *Mattel*, 353 F.3d at 803 (internal citations and quotation marks omitted). "This factor has both a quantitative and a qualitative component, so that courts have found that use was not fair where the quoted material formed a substantial percentage of the copyrighted work . . . or where the quoted material was 'essentially the heart of the copyrighted work.'" *New Era Publications*, 904 F.2d at 158 (citing *Harper & Row*, 471 U.S. at 565).

Here, even though Darkspilver copied the entire advertisement, it was only a small portion of the copyrighted work as a whole – the thirty-two page November 2018 Watch Tower magazine. The advertisement was on the last page of the magazine. Again, there is no factual dispute about this issue. Nor was the advertisement qualitatively the heart of the published magazine, which was full of articles discussing matters of faith for Jehovah's Witnesses. In contrast, the advertisement described how to make online donations to the organization.

### d. Effect of Use on Potential Market for or Value of Copyrighted Work.

The fourth factor "asks whether actual market harm resulted from the defendant's use of plaintiff's protected material and whether 'unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market' for the original or its derivatives." *Mattel*, 353 F.3d at 804 (quoting *Campbell*, 510 U.S. at 590). A use that has no demonstrable effect upon the potential market for, or the value of, the copyrighted work need not be prohibited in order to protect the author's incentive to create. *Id.* at 450. Therefore, "[w]hat is necessary is a showing by a preponderance of the evidence that *some* meaningful likelihood of future harm exists. If the intended use is for commercial gain, that likelihood may be presumed. But if it is for a noncommercial purpose, the likelihood must be demonstrated." *Id*. at 451 (emphasis in original).

Watch Tower has not demonstrated any actual harm or likelihood of future harm. It argued

generally at the hearing that the harm it suffered from people infringing on its copyrights was directing others away from its website. However, the advertisement that Darkspilver posted directs people to visit the website to make a donation. Nevertheless, Watch Tower has not yet had a chance to conduct discovery on its copyright claim or to engage an expert to conduct a market analysis. Perhaps Watch Tower, if provided the opportunity, could demonstrate that fewer people visited its website after Darkspilver's posting. The Court is hesitant to deprive Watch Tower of the opportunity to develop its claim and supporting evidence before it has even filed suit.

In balancing the harms, while considering the fair use defense, the Court finds that they tip sharply in Darkspilver's favor. However, the Court notes that Darkspilver's concerns stem largely out of his fear that those in his congregation will discover his identity and shun him. If Reddit reveals Darkspilver's identity to Watch Tower's counsel, under an "attorney's eyes only" restriction, then any harm to Darkspilver would be alleviated. This restriction would enable Watch Tower to pursue its copyright claim without causing harm to Darkspilver.

Therefore, the Court HEREBY GRANTS IN PART and DENIES IN PART Darkspilver's motion to quash. Reddit shall respond to the subpoena and provide the requested information to Watch Tower's counsel. **However, only attorneys of record in this matter may obtain information about Darkspilver's identity.** Watch Tower's attorneys of record shall not to disclose Darkspilver's identity to anyone else without approval in a Court Order from this Court. For example, Watch Tower's attorneys of record may not disclose Darkspilver's identity even to its client, staff, or expert witnesses without approval in a Court Order from this Court.[3]

/ / /

/ / /

/ / /

/ / /

---

[3] Watch Tower claimed at the hearing that it plans to disclose Darkspilver's identity to its forensic experts so that Watch Tower can determine how Darkspilver obtained confidential information in the chart and prevent further disclosure of that confidential information. This purpose is not related at all to a copyright issue, and for that reason, the Court rejects that form of disclosure.

If Watch Tower elects to file a lawsuit against Darkspilver, the Court directs Watch Tower to seek to file the suit under his pseudonym and to keep his actual identity under seal, for attorney's eyes only.  Moreover, Watch Tower is admonished that any violation of this Order will be sanctioned and that this Court retains jurisdiction over any potential violation of this Order.

**IT IS SO ORDERED**.

Dated: May 17, 2019


_____
SALLIE KIM
United States Magistrate Judge