Pages 1 - 30

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES DONATO, JUDGE

In Re DMCA Subpoena to      )
Reddit, Inc.                )   **No. 19-mc-80005-SK**
_____ )
                                San Francisco, California
                                Thursday, August 1, 2019


**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Petitioner:
                     WATCH TOWER BIBLE AND TRACT SOCIETY OF
                      PENNSYLVANIA, Legal Department
                     100 Watchtower Drive
                     Patterson, New York 12563
                BY:  **PAUL D. POLIDORO, ESQ.**

For Movant John Doe:
                     ELECTRONIC FRONTIER FOUNDATION
                     815 Eddy Street
                     San Francisco, California  94109
                BY:  **ALEXANDRA MOSS, ESQ.**
                     **DAVID GREENE, ESQ.**




Reported By:    Katherine Powell Sullivan, CSR #5812, CRR, RMR
                Official Reporter - U.S. District Court

<u>**Thursday - August 1, 2019**</u>                              <u>**10:49 a.m.**</u>

<u>**P R O C E E D I N G S**</u>

---oOo---

**THE CLERK:**  Calling Miscellaneous Case 19-80005-SK, In Re DMCA Subpoena to Reddit, Inc.

Counsel, please state your appearances for the record.

**MS. MOSS:**  This is Alex Moss from the Electronic Frontier Foundation.  And with me is David Greene from the Electronic Frontier Foundation.

**MR. POLIDORO:**  Paul D. Polidoro representing Watch Tower.  Good morning.

**THE COURT:**  Good morning.

Well, let's -- I just have a couple of questions.  Let me just start with I want to understand procedurally where things are, all right.

Now, looks to me, Ms. Moss, like you agree, both of you agree that this was a dispositive order in the sense that it was one and done with the magistrate judge.  This is the whole issue presented to the Court, and the order resolved it, and that makes it dispositive.

Is that something you agree with?

**MS. MOSS:**  We do agree that the order was dispositive.

**THE COURT:**  Mr. Polidoro?

**MR. POLIDORO:**  Your Honor, it's dispositive in the sense that it's resolved the issue of the subpoena itself.

1  However, Judge Kim has retained jurisdiction as we move

2  forward.

3          THE COURT:  Well, for any production disputes.

4          MR. POLIDORO:  That's correct.

5          THE COURT:  No, I understand that.  Just sort of on

6  the -- you would agree on the substantive issue, the main game,

7  that was dispositive?

8          MR. POLIDORO:  Yes, Your Honor.

9          MS. MOSS:  May I just correct one statement?

10     Judge Kim, in the transcript, specifically made clear that

11  she couldn't reserve jurisdiction because even if she did the

12  Supreme Court would have the opportunity to change that.  So

13  she didn't rule on jurisdiction or offer to continue having

14  jurisdiction over any discovery issues.

15     There are --

16          THE COURT:  That's okay.  I understand.  We don't have

17  to worry about that right now.  It may come up later, but we

18  don't have to do that right now.

19     Now, typically, you know a motion for subpoena would not

20  be considered dispositive because it doesn't decide the merits

21  of the case.  But I think there actually is good reason here to

22  agree with you that it is a dispositive issue in this sense:

23  There is no main case where the subpoena was served in aid of

24  discovery.

25     So in that case, I mean, typically these motions to compel

1    or motions to quash come in because there's substantive

2    litigation going somewhere, and there's something in the

3    district somebody wants, and there's a fight about it.

4         Obviously, the fight about that has no impact on the

5    merits of the case.  So that's clearly nondispositive.

6         Do you see what I'm saying, Ms. Moss?

7              **MS. MOSS:**  I do.  I agree with Your Honor.

8              **THE COURT:**  Mr. Polidoro?

9              **MR. POLIDORO:**  Yes, Your Honor.

10             **THE COURT:**  And there is a group of subpoenas that are

11   called agency subpoenas, like from the NLRB or FTC and other

12   places, that are very analytically similar to what happened

13   here.  There's no case, there's no main litigation going on but

14   the agency serves a subpoena.  And typically, at least in our

15   circuit, those have been held to be dispositive.

16        So I'm just telling you where I am.  And I think that's

17   how I'm going to come out and see it your way on that, that it

18   is dispositive, okay.

19        Now, the second step is, what happened in front of the

20   magistrate with consent?

21        Now, Mr. Polidoro, you and your client clearly consented

22   because you filed that form saying, I agree to have the

23   magistrate judge handle this.

24        Now, the EFF and your client -- what was his name?  Do

25   they call him dark --

1    **MS. MOSS:**  Darkspilver is their Reddit name.

2    **THE COURT:**  Yes.  Say that again.

3    **MS. MOSS:**  Darkspilver.

4    **THE COURT:**  Darkspilver, okay.

5  EFF and Darkspilver didn't file that form.  And I just --

6 did you consent to the magistrate's jurisdiction?

7    **MS. MOSS:**  No, Your Honor, we didn't consent.  And we

8 didn't have any notice that the magistrate considered this THE

9 kind of proceeding that would be proper to treat under section

10 636(c).

11  For the reasons, as you've discussed, that we viewed this

12 as a dispositive motion, we believe it should be treated like

13 other dispositive motions, like a motion to dismiss, and,

14 therefore, isn't eligible for treatment under section --

15 subsection (c).

16  But even if it were, there was no notice and no

17 opportunity to provide consent to give up having an Article III

18 judge consider us in the first instance.

19    **THE COURT:**  Well, you got the form, that same form

20 that Mr. Polidoro got, because the Clerk's Office mails that

21 out to all of the participants as soon as you get assigned to a

22 magistrate judge.

23  Did you get that form, the consent and declination form?

24    **MS. MOSS:**  To be honest, Your Honor, I don't recall

25 receiving it.  And that, of course, might be my error, but no.

1          **THE COURT:**  Well, it comes out in the package you get

2    from the Clerk's Office.

3        I mean, Mr. Polidoro, that's how you got it; right?

4          **MR. POLIDORO:**  Correct, Your Honor.

5          **THE COURT:**  It goes to all the litigants.  So I'm

6    going to assume for a minute that you did, you know, just as a

7    talking point.

8        But then you certainly saw on the docket, you saw that

9    Mr. Polidoro and his client filed the Notice of Consent.  I

10   mean, you saw one side doing it.  It's right on your docket

11   that you have ECF access to.

12       Look.  I'm just trying to figure out what happened.  So

13   you never said to the magistrate judge "we consent" or "we

14   decline"?  It just never came up on your side?

15         **MS. MOSS:**  Correct.  We didn't believe that this was

16   the kind of proceeding where that would be necessary.  We

17   viewed this as a dispositive argument, and so we didn't -- we

18   didn't provide explicit consent.

19       We also didn't receive any notice that Judge Kim viewed

20   this as a proceeding that would be treated under 636(c).  So

21   when we participated in the proceeding, we didn't have any

22   notice or reason to believe that it was being treated that way.

23         **THE COURT:**  Even so, why didn't you just take a stand?

24   Why did you just say nothing?

25         **MS. MOSS:**  In retrospect, you're right.  Next time

1  that's what we should have done to avoid this.  And, frankly,

2  we were -- you know, I think it's a point that would be for

3  next time.

4          THE COURT:  So it just sort of happened, in other

5  words.  Okay.  And you all didn't have a conversation with the

6  magistrate judge about consent?

7          MS. MOSS:  Correct.

8          THE COURT:  Is that true, Mr. Polidoro?

9          MR. POLIDORO:  That's true, Your Honor.  However, I do

10  believe Judge Kim has standing orders with respect to consent.

11          THE COURT:  I think that's true.  I think you cited

12  those in your papers.

13      Just in --

14          MR. POLIDORO:  Yes, Your Honor.

15          THE COURT:  -- the back and forth in court that never

16  came up, Ms. Moss?

17          MS. MOSS:  No, it never came up.

18          THE COURT:  I didn't see it, but I just want to make

19  sure I have everything.

20      Did you all have a discussion about whether this motion to

21  quash would be considered dispositive or nondispositive?

22          MS. MOSS:  No, we didn't have any con- -- didn't have

23  any conferences prior to the hearing.

24          THE COURT:  But even at the hearing you-all didn't

25  talk about that with Judge Kim?

1          **MS. MOSS:**  We've had no conversations about it with

2    Judge Kim or with opposing counsel.

3          **THE COURT:**  Is that right, Mr. Polidoro?

4          **MR. POLIDORO:**  Yes, sir.

5          **THE COURT:**  Well, it's a procedural twist.  In my

6    view -- and I'm just going to tell you where I'm leaning.  I'm

7    going to do a short written order on this, just for clarity,

8    because I find it to be an interesting issue.

9          If we start from the premise that this was dispositive,

10   the magistrate judge had authority to issue an order, a

11   footnote order.  I'm going to come back to that in a minute.

12   But the magistrate judge would have authority to issue an order

13   only with the express consent of both sides.  If both sides

14   don't consent, the magistrate judge cannot resolve a

15   dispositive matter.

16         This is an unusual twist.  I'm not faulting anyone because

17   motions to quash typically aren't dispositive.  But in this

18   setting, as I said, and we all agree a good argument can be

19   made that they are, this one was dispositive not only because

20   of the DMCA Section 512(h) but because of the admin analogs and

21   some other things I'll put in the order.

22         So you got an order that probably should not have been

23   entered because it was outside the jurisdiction of the

24   magistrate judge to do.  Now, that's fine.

25         The reason I footnoted order is I have, sort of, two

options here.  I can just vacate it because it was beyond
jurisdiction.  And that, frankly, seems like a waste.  You all
spent time and money on these briefs, and everything is teed
up.  Or I can treat it as a report and recommendation, which is
what we typically do when a magistrate deals with a dispositive
matter without consent.

Sometimes it's referred by a district judge, sometimes it
just comes up through the case system we have.  But it's
considered a report and recommendation, not an order, which
seems like a technical difference, but it's not a technical
distinction.  It's actually a substantive distinction.

So I'm inclined to do that and save you all from having to
go back to ground zero and redo everything, and just move on
from there.

How does that sound, Ms. Moss?

**MS. MOSS:**  That sounds good to us.

**THE COURT:**  Are you okay with that, Mr. Polidoro?

**MR. POLIDORO:**  In a sense, Your Honor, we still feel
that under *Roell* and this Circuit's decision in *Henderson* that
the appropriate step would have been a direct appeal to the
Ninth Circuit.

**THE COURT:**  Actually, I'm glad you mentioned that.

On the issue of implied consent, I spent a long time -- so
*Roell*, of course, is the Supreme Court case on implied consent.
I spent a lot of time thinking about that and reading what I

1   could read that I thought was applicable.

2       Here is what I have concluded.  I was going to address

3   this in the order, but I'll just tell you what I'm thinking.

4       So you can, of course, have implied consent to a

5   magistrate judge's treatment of a dispositive issue.

6       And the problem that I have with *Roell* is the magistrate

7   judge asked constantly whether anybody had declined her

8   authority and whether anybody had any objection to going

9   forward.

10      And on that record, Justice Souter said, well, if you're

11  asked that many times and stand there like a stuffed straw

12  dummy, that's on you.  You can't say later that you didn't

13  consent.

14      You didn't have that here.  That just never came up.  So

15  there was no dialogue, at all, with the magistrate judge either

16  about the dispositive or nondispositive nature of your motion

17  to quash, or consent or declination.  Nothing happened.

18      So in *Roell*, Justice Souter made it pretty clear that it

19  was the repeated questions that turned the trick.

20      Now, even so, I was willing to think, well, you know, EFF

21  filed briefs and had an argument.  Why isn't that enough?  And

22  somewhat to my surprise, I found a Ninth Circuit opinion, *Allen*

23  *v. Meyer*.  Do you know it?

24          **MR. POLIDORO:**  No, sir.

25          **THE COURT:**  *Allen v. Meyer*, 755 F.3d 866.  It's from

2014.  So it's a good 11 years after *Roell*.  And in that case the same issue came up.  Magistrate judge ruled on some motions to dismiss, and it was a civil rights case against some police officers.  And the police officers themselves brought motions to dismiss and briefed them.  And then afterward there is some dispute about whether they had consented to the magistrate judge.

And, to my surprise, the Circuit said on that record, which is almost identical to the record here, quote:

> It is undisputed that the officers furnished neither express nor implied consent to jurisdiction before a magistrate judge, closed quote.

That's *Allen*, 755 F.3d at 868.

So, in other words, the Circuit has expressly declared, apparently, that simply submitting briefs and appearing in arguments is just not enough.  And I cannot see a way around what *Allen v. Meyer* says.

So I'm not sure it's the right answer, but it is the answer on the table.  And that's what we have.  Otherwise, I might have been inclined to think there was a pretty good argument under just common sense if nothing else.  And if you go to a party and you drink the punch, you can't say you weren't a guest.  But, anyway, that's how I think it's going to roll out, okay.

Having said all that, I'm just going to do it on an R&R

1   basis, okay.

2       And what would you like to say about the merits?

3       **MS. MOSS:**  Your Honor, this subpoena isn't about

4   copyright infringement.  It's an effort to find out who our

5   client is.  We know that because Watch Tower does not have any

6   cognizable copyright claim.  It also doesn't have any actual

7   need to know our client's name.  All it has submitted here are

8   bare assertions that it owns material that Judge Kim found was

9   overwhelmingly fair use.

10      Now, based on this, Your Honor, there is no basis for

11  compelling disclosure of our client's name under *Highfields*,

12  both because the underlying claim has no merit and because the

13  balance of harm tips overwhelmingly in our client' favor,

14  particularly given Watch Tower's failure to demonstrate any

15  actual or likely harm would result if its request were denied.

16      We think the real danger here is the slippery slope that

17  ruling for Watch Tower would create.  They're asking for a rule

18  that lets anonymous speakers be unmasked, even where there is

19  overwhelming indicia of fair use, without any consideration of

20  whether that's fair use.

21      That will guarantee that some anonymous fair use

22  commentary is quashed.  That will turn the DMCA into a tool for

23  powerful organizations to silence speech that they don't like.

24  And that's what's happening here.

25      **THE COURT:**  Your client lives overseas; is that right?

1    **MS. MOSS:**  Our client is not a citizen or resident of

2    the U.S. and is overseas, correct.

3    **THE COURT:**  Okay.  And what's your understanding of

4    the purpose of a section 512(h) subpoena?

5    **MS. MOSS:**  Is to uncover the identity of somebody

6    suspected of copyright infringement or to facilitate

7    infringement litigation or other -- specifically copyright

8    enforcement.

9    **THE COURT:**  All right.  Mr. Polidoro.

10   **MR. POLIDORO:**  Yes, Your Honor.  Taking a step back,

11   to put this in context, Judge, at one time Watch Tower was a

12   publisher of religious literature.  And Watch Tower zealously

13   litigated freedom of speech, freedom of press, freedom of

14   religion.

15       Virtually overnight, Watch Tower turned into a digital

16   media entity where the majority of publications are now

17   digital.  And we also have our JW.org, which is our website.

18   It's the primary means of disseminating religious and spiritual

19   food.

20       Watch Tower saw that it was the wild, wild west with

21   respect to copyright infringements, so they started to give

22   some legal attention to the infringements that were taking

23   place.

24       What we've done is we've identified some cases that we're

25   going to pursue.  That's our next step, is actually pursuing

1    copyright infringement cases.

2         Now, let's speak about this specific case.   In their

3    reply, counsel says there's two items here, Your Honor.

4    There's an article that speaks about Bible-based principles in

5    donating, and there's --

6              THE COURT:   That's the Back Page, right, that copy I

7    got?

8              MR. POLIDORO:   They refer to it as the Back Page, Your

9    Honor, but it's a standalone article on JW.org.

10             THE COURT:   It's a standalone?

11             MR. POLIDORO:   It is.   It's a standalone article on

12   JW.org.   And even as a standalone article it receives copyright

13   protection.   It's a scripturally-based discussion of why it's

14   appropriate under The Bible to donate.

15        And then there's the chart.   In their reply, counsel says

16   that the chart is not copyrightable.   There's only one way to

17   answer that, Judge, so what we've done is we filed with the

18   Copyright Office for expedited registration.   And that came in

19   on Monday, Judge.

20        What I'd like to do is provide you, Your Honor --

21             THE COURT:   Yes, please.

22             MR. POLIDORO:   -- and Counsel with a copy of the

23   Certificate of Registration.   It's certificate number

24   TX8747858.   And that is as to the chart.

25             THE COURT:   This is for that --

1          **MR. POLIDORO:**  That's for the chart discussing data

2     protection.

3          **THE COURT:**  Okay.

4          **MR. POLIDORO:**  Now, there was also, apparently,

5     despite Judge Kim's finding that Darkspilver did not contest

6     registration and, thus, ownership -- and that's on page 10 --

7     counsel, in their reply, still seems to have an issue with

8     whether Watch Tower actually owns the copyright on this article

9     that was in the Watch Tower and on JW.org.

10         So I would like to hand up to the Court Certificate of

11    Registration for the article.  And that's TX8614505.  And I'm

12    providing Counsel with a copy of that also.

13         **THE COURT:**  Okay.

14         **MR. POLIDORO:**  Your Honor, from a purely statutory

15    perspective, the DMCA allows a copyright holder to use the

16    subpoena process to advance their copyright protections and to

17    identify an individual who has infringed.

18         This case, Judge, has nothing to do with anonymous speech.

19    An Internet user can say whatever they choose to say

20    anonymously on the Internet.  They're entitled to do that.

21    What they're not entitled to do is to anonymously infringe

22    someone's copyright.

23         Now, we believe the appropriate test in the Ninth Circuit

24    was the test articulated by the Ninth Circuit in the *Lenz* case.

25    *Lenz* speaks about fair use.  And what the *Lenz* court said is

1    the copyright holder need only form a subjective good-faith

2    belief that a use is not authorized.

3        Watch Tower does, in every subpoena, that subjective

4    good-faith analysis.

5            **THE COURT:**  Let me just jump in.  I want to make sure

6    I understand that chart.

7        So that chart was a document that Watch Tower put

8    together; is that right?

9            **MR. POLIDORO:**  That's correct.

10           **THE COURT:**  So this is just straight out of a Watch

11   Tower --

12           **MR. POLIDORO:**  No, that's something that we prepared

13   for internal use, Your Honor.

14           **THE COURT:**  I understand, but it's straight out of the

15   Watch Tower files?

16           **MR. POLIDORO:**  Correct.

17           **THE COURT:**  It's not something that Dark- --

18           **MS. MOSS:**  -- -spilver.

19           **THE COURT:**  -- -spilver put together?

20           **MR. POLIDORO:**  No, that's ours.

21           **THE COURT:**  All right.

22           **MS. MOSS:**  Although, if I may, there were

23   modifications.  The chart that Darkspilver actually posted was

24   altered from the original version created.

25           **THE COURT:**  I'm looking at it.  Can you show me where

1   those might be?

2       **MS. MOSS:**  Well, if you're looking at both, the sort

3   of layout was reformatted.  The content wasn't altered, just

4   the visual appearance, so that it could be more easily viewed

5   on a computer screen.

6       **THE COURT:**  All right.  So he just fiddled with the

7   formatting?

8       **MS. MOSS:**  Yeah.  I think it was originally an Excel

9   file, and then it was turned into a flat image that could be

10  viewed.

11      **THE COURT:**  I see.  Okay.  But the little boxes of

12  information were not altered?

13      **MS. MOSS:**  The contents, correct.

14      **THE COURT:**  Okay.  All right.  Go ahead.

15      **MR. POLIDORO:**  Thank you, Your Honor.

16      And as for the article -- Your Honor is correct for the

17  chart.  The chart I think he just published with a caption and

18  with the word "Leak."  That was it.  The chart is in its

19  entirety.  And the article on donations, again published,

20  republished in its entirety under the caption "Guess What?"

21      So the *Lenz* court, I believe, sets the standard for what a

22  copyright holder needs to do.  And we do that in every case,

23  Your Honor.  The legal team, myself personally, take a look at

24  the infringements that we're considering making the subject of

25  subpoena.  I have a forensic team that works with me.

1          In this instance, I looked at the universe of what

2     Darkspilver had posted.  Some we made subject to the subpoena.

3     Some I've decided was borderline fair use, and we decided not

4     to pursue that.

5               THE COURT:  Can you give me an example of what you

6     thought was fair use that you wouldn't pursue?

7               MR. POLIDORO:  I think it was something more

8     commentary based, where he didn't use our whole entire article.

9          So this just veered entirely outside with respect to the

10    taking of the article in its entirety and virtually nothing

11    transformative in nature.

12         Some other articles may have been slightly transformative.

13    There was nothing transformative about what he's done in this

14    case.

15         So under the DMCA --

16              THE COURT:  I'm sorry to interrupt.

17         So your position is, as far as your client is concerned,

18    Darkspilver is perfectly free to criticize the Church all day,

19    every day, for being avaricious and greedy.  His words, not

20    mine.  But you draw the line when he starts using your own

21    copyrighted material as part of that.

22              MR. POLIDORO:  Precisely.

23         And Darkspilver has done that, Judge, and many do that on

24    the Internet.  We're not the Internet police.  It's clear,

25    individuals have a right of anonymous free speech.  But it's

 1   their own free speech.

 2       If we look at the cases that set the right for anonymous

 3   discourse in the United States, *Watch Tower versus Stratton* was

 4   based on McIntyre.  And it was Mrs. McIntyre who was going door

 5   to door, giving out pamphlets addressing some sort of upcoming

 6   election, I believe.  It's her own speech.  She didn't steal

 7   someone else's speech and say, I have a right to anonymously

 8   steal this and post it.

 9       Darkspilver can say whatever he wants from his own mouth;

10   he just can't violate other individual's copyrights.

11           **THE COURT:**  Wouldn't you agree, though, that really

12   the issue here is whether the use of the copyrighted materials

13   would be fairly characterized as fair use or not?

14           **MR. POLIDORO:**  You know, Your Honor, we think that's

15   premature as an assessment.  We think that under the DMCA

16   statute Congress has already made this assessment with respect

17   to fair use and free speech.

18       Congress has set up that if someone feels that they did

19   not infringe, they have the right to file a counter

20   notification under the statute.  Or if they feel that there's a

21   misrepresentation on the part of Watch Tower, they have a

22   512(h) remedy.

23       The fair use analysis that we're now shoved into

24   prematurely, we're almost at, like, a trial stage to prove or

25   disprove this, is because of the application of *Highfields* and

 1    *Art of Living*, and *Signature Management*.

 2        May I speak about that for a moment?

 3            **THE COURT:**  Please, yes.

 4        **MR. POLIDORO:**  The *Highfields* case, we think is

 5    inappropriate to apply in this setting.

 6        First, *Highfields* was not a DMCA case.  *Highfields*

 7    involved an individual who posted under the name Highfields.

 8    And the corporate entity, I think it was a financial concern,

 9    had some challenge with that.  And it appeared that they were

10    casting about and thrashing about for some cause of action.

11        There's something fundamentally different here, Your

12    Honor.  We have a cause of action.  It's copyright

13    infringement.  So the policy of *Highfields* --

14            **THE COURT:**  *Highfields* is just a Rule 45 subpoena.

15        **MR. POLIDORO:**  That's correct.  It doesn't even apply

16    to this process.

17        But under *Art of Living* and *Signature Management*, they've

18    ingrafted the *Highfields*' analysis into the DMCA process, it

19    seems.

20        But there's a difference in both of those cases that are

21    absent here, Your Honor.  In *Art of Living* there was an

22    Internet posting of the name of the dissident and his contact

23    information.  And there appeared, in that case, that there was

24    a discussion of a threat of physical harm.  And that's

25    something very different indeed.

And that's also the case in *Signature Management*.  If we look, it's at page, I believe, 1149, footnote 5, the Court noticed the language on the Internet that was harassment that elevated to the form of a threat.  So those two cases were fundamentally different indeed.

But even in *Highfields* it underscores the need why a copyright holder needs to know who this person is.  It's not only to sue them.

Because, I think, even in *Highfields* it said regardless of counsel's assertion that they would accept service of process, there's more in infringement litigation.  There's the opportunity to have pretrial deposition, to actually see someone face-to-face and move forward with the case.

Watch Tower, as the copyright holder, also has the right to seek a permanent injunction against Darkspilver for the violation of its copyright rights.

I don't know how that would get enforced, Your Honor --

**THE COURT:**  I appreciate it.

Let me ask you this though.  *Lenz* is not -- how are you going to manage *Lenz*?

**MR. POLIDORO:**  I think *Lenz* there was a discussion of what's the role of fair use in this whole process.

And what *Lenz* said is it's a subjective good-faith belief that the copyright holder needs to do something, just not nothing willy-nilly sending subpoenas out all over.

1    And Watch Tower complied with the Ninth Circuit

2    requirement.  I've done the analysis.  My associate has done

3    analysis.  Our forensic team works with us.  So we had a

4    subjective good-faith belief that the use was not authorized.

5    So --

6         **THE COURT:**  Well, just on that issue, I think that's a

7    reasonable reading of *Lenz*, because *Lenz* clearly says it's the

8    copyright holder that must consider the possibility of a fair

9    use issue, which I think is at odds with how you describe what

10   Congress did.

11        I don't think Congress has made that balance.  And I think

12   *Lenz* pretty clearly says the burden is on the holder.

13   Otherwise, *Lenz* would have said what you said five minutes ago.

14   We don't have to address this issue because Congress has

15   already struck the balance.

16        Do you see what I'm saying?

17        **MR. POLIDORO:**  Yes, I do, Judge.

18        **THE COURT:**  Do you agree with that?

19        **MR. POLIDORO:**  I think so.  I think *Lenz* has gone

20   beyond with respect to fair use.  But having said that, Your

21   Honor, I think Watch Tower complied with it.

22        **THE COURT:**  All right.  Let me just pause there and

23   hear from Ms. Moss.

24        **MS. MOSS:**  Of course, *Lenz* is a suit about wrongful

25   takedown.  This is Watch Tower's effort to enforce a subpoena.

1        The fact that copyright holders have to consider fair use

2   before even sending a takedown notice confirms that courts have

3   to consider fair use before enforcing the DMCA.  My friend's

4   effort to rely on *Lenz* completely ignores the procedural

5   context of that case and of this one.

6        I also want to turn to the point about the difference

7   between being -- speaking anonymously about one's own words and

8   somebody else's, right.  This is where my friend's argument is

9   really driving at the core of the fair use doctrine.

10       The whole point of the fair use doctrine is to allow

11  people to use other people's copyrighted works for purposes of

12  criticism and commentary without getting consent from the

13  copyright holder.

14       **THE COURT:**  Just on that issue, the whole work?  Why

15  not just a couple of lines from the work?

16       **MS. MOSS:**  Well, the fair use --

17       **THE COURT:**  Why just take the entire article

18  untransformed and just put it up?  You know, copyrighted

19  material.

20       I mean, I certainly think it's fair to comment on it, have

21  quotes from it.  I don't think there's any doubt that that

22  would be, in this context, fair use.

23       But when you wholesale -- I'm just asking.  I don't know

24  what the answer is.  But when you take a wholesale document and

25  just throw it up, I mean, how is that fair use?

1    **MS. MOSS:**  If our client had taken the whole Watch

2  Tower magazine and put it up on a link downloadable, as you saw

3  in the *Signature Management* case, we might be having a very

4  different conversation.

5    Our client took one page, the Back Page.  As Judge Kim,

6  said this is a small portion of a 32-page work.  The

7  registration that they've given you shows that what's

8  registered is the entire magazine.

9    So whatever may or may not be a standalone link on JW.org,

10  what's registered is an entire volume of which the portion our

11  client used was one thirty-second.

12    **THE COURT:**  So your colleague has said that, in fact,

13  is not right.  It's a freestanding -- you said it was a

14  freestanding article.

15    **MR. POLIDORO:**  On the website, you're absolutely

16  correct, Judge.

17    **MS. MOSS:**  I would be interested if there was any

18  registration for that freestanding article or whether the

19  registration was for the whole magazine.

20    **THE COURT:**  Well, the registration I have is for the

21  volume, not the individual page.  Is that right?

22    **MR. POLIDORO:**  That's correct judge.

23    **THE COURT:**  Okay.  So there's no separate copyright

24  just for that one article?

25    **MR. POLIDORO:**  No, we wouldn't copyright every page.

1        Your Honor, I believe the Ninth Circuit has already

2   addressed this point that Counsel is making about the one page

3   out of a 32-page magazine.

4        If I can turn Your Honor's attention to *Hustler Magazine*

5   *versus Moral Majority*, the cite is 796 F.2d 1148.  And this

6   quote will be from page 1155.  It's a Ninth Circuit decision,

7   1986.  And I quote.

8            "A creative work does not deserve less copyright

9            protection just because it is part of a composite work.

10           Therefore, in this case, we view the defendants as having

11           copied an entire work."

12       In that instance, the defendant copied one page from a

13   154-page magazine.  So we believe that the Ninth Circuit has

14   already spoken to the issue that Counsel is raising.

15       And in the case of *Monge versus Maya Magazines* -- and this

16   cite, Your Honor, is 688 F.3d 1164.  Again, it's a Ninth

17   Circuit decision, 2012.

18       It speaks of the question Your Honor had posited.  Here in

19   the *Monge* case, and I believe it's on page 1174:

20           "The evidence reveals that generally exact copies of

21           whole or substantial portions of article are posted.

22           There is little transformative about copying the entirety

23           or large portions of a work verbatim."

24       And I misspoke, Your Honor.  That's *L.A.* *Times versus Free*

25   *Republic*.  That cite is at page 24.  Now --

1    **THE COURT:**  Okay.  Let me hear the rest.

2    **MS. MOSS:**  May I respond?

3    **THE COURT:**  Please, yes.  Go ahead.

4    **MS. MOSS:**  I'd like to turn the Court to what Judge

5    Kim said.  The advertisement, that Back Page, whichever you

6    prefer to call it, was largely informational and functional,

7    directing readers how to make donations online.

8    Your Honor, if you take a look at that Back Page, there is

9    very little creative content to it.  In fact, the,

10   quote-unquote, article consists largely of Biblical quotes

11   that, of course, Watch Tower couldn't have written itself.

12   In fact, looking at the Back Page, it's not a creative

13   work of the kind at issue in the cases counsel has cited.  It's

14   a functional and informational Back Page that primarily focuses

15   on instructions for how to make online donations.

16   Our client could not have used any less than that whole

17   Back Page because the whole point was to show that Watch Tower

18   was using the entire Back Page to solicit and instruct people

19   on how to make online donations.

20   For our client this was an important point, because in the

21   past this same section would have been devoted entirely to an

22   article and wouldn't have included a request for online

23   donations.

24   They also believe that the practice of emphasizing online

25   donations, at all, is in contrast with Church practices as

1   opposed to, for example, encouraging or focusing on nonmonetary

2   contributions or contributions to a local congregation.

3       Our client's point was really to show, Look what they're

4   using the Back Page for, and look how much of it is being used.

5   And that was the point of their comment, saying, What gift can

6   you give Jehovah?  Guess what?

7       And it was to comment sarcastically and suggest to others

8   that they should think critically on what was happening on that

9   Back Page.

10      And in case after case the question isn't whether it's one

11  page or the all of it.  It's whether any less would have served

12  the transformational purpose.  And here they just couldn't have

13  used less.

14          **THE COURT:**  Okay.  That was very helpful.  Let me ask

15  two closing questions.

16          **MR. POLIDORO:**  Your Honor, may I impose on the Court

17  just to briefly respond to that?

18          **THE COURT:**  Very briefly.

19          **MR. POLIDORO:**  Religion is protected.  Religious

20  discourse under the *Worldwide Church of God versus Philadelphia*

21  *Church of God*, a Ninth Circuit case, 227 F.3d 1118, says that

22  scriptural discussion is precisely the type of creativity that

23  the Copyright Act was intended to protect.

24      *Harper versus Rowe* says that there's not a free license to

25  reproduce whatever you want.  And what Judge Kim said is that

1   Darkspilver reproduced it to evoke conversation.  The Supreme

2   Court has already ruled on this and said there's no warrant for

3   judicially imposing a compulsory license.

4          **THE COURT:**  Did you send a takedown notice to Reddit?

5          **MR. POLIDORO:**  Yes.

6          **THE COURT:**  Did they take it down?

7          **MR. POLIDORO:**  Yes.  They took down the ad.  They did

8   not take down the chart.

9          **MS. MOSS:**  If I may intervene.  Our client took the

10  chart down.

11         **THE COURT:**  So the chart is off.  So your client took

12  the chart down and Reddit took the ad down.

13      I mean, Mr. Polidoro, just let's talk practically here for

14  a moment.

15      The poster is outside the territory of the United States.

16  I mean, it's off the Web now.  It seems that the Church's main

17  concerns have been addressed by the takedown.  And I wasn't

18  opposed.

19      I don't know why I can't say this properly.  Darkspilver.

20         **MS. MOSS:**  Darkspilver, yes.

21         **THE COURT:**  Darkspilver has cooperated and voluntarily

22  took it down.  Isn't it enough to call it a day and not

23  necessarily find out who he is or she is?

24         **MR. POLIDORO:**  I think Watch Tower, as the holder of

25  intellectual property, has the right to move forward with

copyright litigation where appropriate.

     **THE COURT:**  That person doesn't live in the United States, so what are you going to do?

     **MR. POLIDORO:**  We're accepting that as a statement of fact.  But for this purpose, Your Honor, just because he doesn't live in the United States doesn't mean we can't bring action against him wherever he is.

     **THE COURT:**  You're not going to bring it under U.S. law.  You're going to have to sue under the law of a foreign jurisdiction.

     **MR. POLIDORO:**  That's the whole purpose of the statute, Your Honor, allow the copyright holder to gather information to make those decisions.  And my client would make those decisions.

     **THE COURT:**  Injunctive relief is moot because the article has been removed.  So you're looking at damages.  What are they, statutory damages?

     **MR. POLIDORO:**  Statutory damages for the article on donations but also Watch Tower's right to pursue a permanent injunction.  They have their array of statutory rights as a copyright holder.

     **MS. MOSS:**  Permanent injunction overseas would impose serious extraterritoriality questions.

     **THE COURT:**  Well, it wouldn't be a U.S. injunction.  I don't know what you would get.  Who knows where this person

1  lives.  I'm just, you know, agreeing that the person is not

2  within the territorial boundaries of the United States.

3          **MR. POLIDORO:**  We also have a bigger picture, Your

4  Honor, which is protecting JW.org.

5          **THE COURT:**  I understand.  And that's perfectly

6  legitimate.  And that's what the notification and takedown

7  process is for.  You've achieved total victory with that.  I'm

8  not sure what total victory plus really means.  But it's your

9  case, not mine.

10       So I will decide the issue and I will have it out shortly.

11         **MS. MOSS:**  Thank you, Your Honor.

12         **THE COURT:**  Shortly in District Court terms, all

13  right.

14         **MR. POLIDORO:**  Thank you.

15         **MS. MOSS:**  Thank you.

16       (At 11:26 a.m. the proceedings were adjourned.)

17                         - - - - -

18                 **<u>CERTIFICATE OF REPORTER</u>**

19         I certify that the foregoing is a correct transcript

20  from the record of proceedings in the above-entitled matter.

21  DATE: Monday, August 19, 2019

22

23

24  _____

25       Katherine Powell Sullivan, CSR #5812, RMR, CRR
                 U.S. Court Reporter