1
2
3
4                              UNITED STATES DISTRICT COURT
5                            NORTHERN DISTRICT OF CALIFORNIA
6
7     IN RE DMCA SUBPOENA TO REDDIT,          Case No. 19-mc-80005-SK (JD)
      INC.
8                                             **ORDER RE MOTION TO QUASH**
9
10
11
12          Darkspilver, a pseudonymous user of Reddit, the online social media and discussion site,
13   seeks review of a magistrate judge's decision denying a motion to quash a subpoena issued under
14   the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(h).  The Watch Tower Bible
15   and Tract Society of Pennsylvania ("Watch Tower") served the subpoena on Reddit to uncover
16   Darkspilver's identity after he posted images of Watch Tower documents to criticize its
17   fundraising and data collection practices.  The Electronic Frontier Foundation ("EFF") filed a
18   motion to quash the subpoena on Darkspilver's behalf, which Reddit joined.  Dkt. Nos. 8, 14.  A
19   magistrate judge denied the motion, with the qualification that Reddit produce the identifying
20   information on an attorney's eyes-only basis.  Dkt. No. 18.
21          Darkspilver did not consent to the magistrate judge's jurisdiction, and so the decision is a
22   non-final report and recommendation subject to a de novo review.  The Court concludes that the
23   Reddit postings were a non-infringing fair use of copyrighted works.  Consequently, the Court
24   declines to adopt the recommendation, and grants the motion to quash.
25                                    **BACKGROUND**
26          The salient facts are largely undisputed.  Watch Tower is the headquarters of the Jehovah's
27   Witnesses.  It publishes and widely distributes religious periodicals such as "The Watchtower"
28   magazine to disseminate its teachings and interpretations of the Bible.  As the Supreme Court has

United States District Court
Northern District of California

observed, Jehovah's Witnesses "take literally the mandate of the Scriptures, 'Go ye into all the world, and preach the gospel to every creature,'" *Murdock v. Pennsylvania*, 319 U.S. 105, 108 (1943) (quoting Mark 16:15), and have prosecuted a number of landmark cases championing the First Amendment rights of freedom of expression, association, and religion. *See Watchtower Bible & Tract Society of New York, Inc. v. Village of Stratton*, 536 U.S. 150, 160-63 (2002).

Darkspilver is a "foreign citizen" who lives outside of the United States. *See* Dkt. No. 8-1 ¶ 6. Although Darkspilver's gender is not in evidence, the prior proceedings used "he" as the applicable pronoun, and the Court will do the same. Darkspilver states that he was raised as a Jehovah's Witness and is a practitioner today, but has "issues" with "aspects of the organization's teachings and practices." *Id.* ¶ 3. To explore those concerns, he participated in a Reddit discussion forum directed to former Jehovah's Witnesses. *Id.* ¶ 5. Although he does not consider himself a former member, he joined the forum for the freedom to "discuss and debate matters related to the Jehovah's Witnesses" without exposing his true identity. *Id.* He valued the anonymity because he was deeply concerned about being ostracized, shunned, or disfellowshipped by the Jehovah's Witness community for voicing criticisms or doubts about the organization. *Id.* ¶ 4; *see also Paul v. Watchtower Bible & Tract Society of New York, Inc.*, 819 F.2d 875, 876-77 (9th Cir. 1987) (detailing the Jehovah's Witnesses' rules and practices of disfellowship and shunning).

In August 2018, Darkspilver posted two items that triggered the subpoena. One item was an image of a solicitation for donations on the back cover of the November 2018 edition of "The Watchtower" magazine. Dkt. No. 8-2. The solicitation -- which was captioned "What Gift Can We Give to Jehovah?" -- quoted Scripture on making contributions and described how to donate online. *Id.* Darkspilver believed the solicitation was an advertisement that represented a commercialized approach to fundraising at odds with traditional teachings of the Jehovah's Witnesses. Dkt. No. 8-1 ¶ 9. He posted the image "to spark discussion about the organization's tone, message, and fundraising practices." *Id.* He states that he did not receive any money or realize any commercial gain from this posting. *Id.*

1    The second item was a screenshot of a chart describing the types of information Watch

2    Tower collected, along with citations to the European Union data privacy laws.  Dkt. No. 8-4.  The

3    apparent purpose of the chart was to summarize how European data collection and disclosure

4    requirements applied to personal information, advance medical directives, recordings of meetings,

5    judicial committee proceedings, and other Watch Tower records.  *Id.*  No actual names or other

6    personally identifying information were disclosed in the chart.  *Id.*  Darkspilver reformatted and

7    edited the chart to make it more readable in the post.  Dkt. No. 8-1 ¶ 10; Dkt. Nos. 8-4

8    (reformatted chart), 8-5 (original chart).

9    Darkspilver states that he posted the chart out of concerns about the scope of the personal

10   and other data maintained by Watch Tower.  Dkt. No. 8-1 ¶ 11.  He wanted to alert members to

11   the wide range of information Watch Tower collected, and how Watch Tower stored those

12   records.  *Id.*  He was particularly concerned about the treatment of abuse complaints, and worried

13   that too many of those records were being deleted.  *Id.*  Darkspilver did not expressly state that he

14   did not receive money or commercial gain from this posting, but Watch Tower does not contend

15   that he did, and nothing in the record shows otherwise.

16   In December 2018, Watch Tower launched proceedings under the DMCA to obtain

17   Darkspilver's identity.  It sent a "take down" notice to Reddit under Section 512(c)(3) of the

18   DMCA, which allows a copyright holder to notify an internet service provider of an unauthorized

19   use of protected material, and to request that it be removed from the website.  Dkt. No. 2, Exh. 1.

20   Reddit removed the solicitation ad in response to the letter, and Darkspilver voluntarily took down

21   the chart.  Dkt. No. 27 (Aug. 1, 2019 Hearing Tr.) at 28:4-12.  Darkspilver states that he has

22   stopped posting on the Reddit forum.  Dkt. No. 8-1 ¶ 12.

23   In January 2019, Watch Tower requested a subpoena to Reddit under the DMCA.  Dkt.

24   No. 1.  Section 512(h) allows a copyright holder to "request the clerk of any United States district

25   court to issue a subpoena to a service provider for identification of an alleged infringer in

26   accordance with this subsection."  17 U.S.C. § 512(h)(1).  Watch Tower represented that it had

27   satisfied all the subsection's requirements and held copyrights for the solicitation ad and chart.

28   Dkt. No. 1.  At that time, Watch Tower held a Certificate of Registration issued by the United

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1   States Copyright Office in October 2018 for the November 2018 magazine as a collective work.

2   U.S. Copyright Reg. No. TX0008614505 (filed Oct. 10, 2018).  But Watch Tower did not have a

3   Certificate of Registration for the chart, and did not get one until July 2019.  *See* U.S. Copyright

4   Reg. No. TX0008747858 (filed July 17, 2019).  It obtained this certificate while the motion for

5   review was pending.  *Id.*; *see also* Dkt. No. 27 (Aug. 1, 2019 Hearing Tr.) at 14:17-19.

6         The subpoena request was filed on its own and not in conjunction with a lawsuit.  Watch

7   Tower has not sued Darkspilver for copyright infringement or any other claim.  Under our

8   district's operating procedures, the freestanding subpoena request was designated a miscellaneous

9   or "mc" action, and randomly assigned to a magistrate judge.  The Clerk served on Watch Tower a

10   standard form requiring it to consent to or decline magistrate judge jurisdiction for all purposes,

11   including the entry of a final judgment directly appealable to the Ninth Circuit.  Watch Tower

12   filed a response consenting to have a magistrate judge handle all proceedings in the case.  Dkt. No.

13   5.  The Clerk issued the subpoena.  Dkt. No. 7; *see also* 17 U.S.C. § 512(h)(4) (directing clerk of

14   court to issue DMCA subpoena).

15         All of these events happened while Watch Tower was the sole party of record.  Darkspilver

16   did not appear until after Reddit advised him that it had received the subpoena and EFF filed the

17   motion to quash on his behalf.  Dkt. No. 8.  The docket does not indicate that Darkspilver or his

18   counsel at EFF were given the consent-or-declination form for magistrate judge jurisdiction, and

19   the record as a whole does not show that they did, in fact, ever expressly consent.  The question of

20   consent was not discussed at the motion to quash hearing before the magistrate judge, or in the

21   ensuing written order.  *See* Dkt. Nos. 17 (May 5, 2019 recorded hearing), 18 (Order).

22         The magistrate judge declined to quash the subpoena.  Dkt. No. 18.  Although the

23   subpoena request was issued for copyright purposes under the DMCA, the magistrate judge

24   framed the issue as a matter of First Amendment rights for anonymous online speech.  The

25   magistrate judge applied a two-part test developed in anonymous speech cases.  *Id.* at 9 (citing

26   *Highfields Capital Management L.P. v. Doe*, 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005), and

27   *Art of Living Foundation v. Does 1-10*, No. 10-cv-05022-LHK, 2011 WL 5444622, at *7 (N.D.

28   Cal. Nov. 9, 2011)).  Under this approach, the court determines whether the subpoenaing party has

4

1   made a prima facie showing of the claim for which disclosure is sought, and if so, the balance of

2   harms to the competing interests caused by granting or denying the subpoena. *Id*.

3       The magistrate judge found that Watch Tower had made a prima facie case for copyright

4   infringement of the solicitation page because it held a copyright registration for the magazine and

5   Darkspilver had copied it. *Id*. at 10.  The magistrate judge found no prima facie case for the chart

6   because it was not registered, and questioned whether "the chart meets the minimum standards of

7   originality required for copyright protection." *Id*. at 11.  For the balance of harms, the magistrate

8   judge determined that Darkspilver had established a likelihood that disclosing his identity would

9   chill his speech and expose him to ostracism by other Jehovah's Witnesses. *Id*. at 12-13.  In

10  weighing possible harm to Watch Tower, the magistrate judge turned to copyright law to

11  determine that Darkspilver had made fair use of the ad, and that Watch Tower faced no likelihood

12  of harm as a result. *Id*. at 16-17.  The magistrate judge concluded that the balance of harms tips

13  "sharply in Darkspilver's favor." *Id*. at 17.

14      Even so, the magistrate judge let the subpoena go forward.  The magistrate judge noted

15  that Watch Tower might have been harmed by loss of visitors to its website after the Reddit

16  postings. *Id*.  The magistrate judge was "hesitant" to terminate the subpoena before Watch Tower

17  had an opportunity to develop this element, and so enforced the subpoena subject to the

18  qualification that access to the information identifying Darkspilver would be limited to the

19  "attorneys of record." *Id*.  This provision was intended to alleviate Darkspilver's fear of

20  ostracism. *Id*.

21      Darkspilver filed a motion seeking de novo review of the magistrate judge's decision.  Dkt.

22  No. 20.  Watch Tower opposes any review of the decision by the Court.  Dkt. No. 21.  Both sides

23  briefed the copyright issues and other merits of the motion to quash, and orally argued their cause

24  to the Court.  Dkt. Nos. 20, 21, 23, 25.

25                                  **DISCUSSION**

26  **I.    JURISDICTION AND STANDARD OF REVIEW**

27      A threshold question is whether this Court should review the magistrate judge's decision,

28  or whether Darkspilver should have appealed to the Ninth Circuit.  The first step in answering this

United States District Court
Northern District of California

5

question is to determine whether the motion to quash was a dispositive or non-dispositive motion.

A motion to quash typically involves a subpoena for discovery in connection with a pending lawsuit.  In that situation, the motion is non-dispositive because it disposes of an ancillary discovery issue, and not a party's claim or defense.  *See Flam v. Flam*, 788 F.3d 1043, 1046 (9th Cir. 2015).

This case is different.  Watch Tower obtained the subpoena on a freestanding basis independent of a complaint or litigation.  In effect, the subpoena is its own civil case, and the motion to quash is dispositive of the sole issue presented in the case -- whether the subpoena should be enforced or not.  Once that question is answered, the dispute between the parties is fully decided.  Darkspilver agrees that the motion to quash was a dispositive motion.  *See* Dkt. No. 20 at 2-3; Dkt. No. 23 at 2-3.  Watch Tower does not meaningfully contest this point.  *See* Dkt. No. 21 at 7-8.  The Court's independent evaluation of the functional effect of the motion confirms that it is dispositive of the only issue in this litigation.  *See Flam*, 788 F.3d at 1046.

This determination matters because the procedures for reviewing a magistrate judge's decision depend on whether the parties consented to entry of a dispositive order.  Magistrate judge jurisdiction is set by statute.  With consent of all of the parties, a magistrate judge may "conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case." 28 U.S.C. § 636(c)(1).  In that situation, the magistrate judge files dispositive orders that may be appealed directly to the court of appeals upon entry of final judgment.  *Id*. § 636(c)(3).  In the absence of consent by all the parties, a magistrate judge may hear all pretrial matters but may address dispositive issues only in the form of a report and recommendation to a district judge, and not in a final order or judgment.  28 U.S.C. § 636(b)(1)(B)-(C).  In this circumstance, the parties may challenge the report and recommendation before a district judge.  *Id*. § 636(b)(1).  The district judge then makes a de novo determination about the report and recommendation, and "may accept, reject, or modify, in whole or in part," the magistrate judge's proposed disposition.  *Id*.

Consent is disputed here.  The record shows that Watch Tower expressly consented to magistrate judge jurisdiction for all purposes, and that Darkspilver never expressly gave his consent.  That might seem to be the end of the matter because the magistrate judge's jurisdiction to

6

1  enter a dispositive order under Section 636(c) depends on consent from all the parties.  *See*

2  *Anderson v. Woodcreek Venture Ltd.*, 351 F.3d 911, 914 (9th Cir. 2003).  But Watch Tower raises

3  the wrinkle of implied consent to Section 636(c) jurisdiction under *Roell v. Withrow*, 538 U.S. 580

4  (2003).  The Supreme Court found that consent to magistrate judge jurisdiction may be established

5  "through actions rather than words" when "the litigant or counsel was made aware of the need for

6  consent and the right to refuse it, and still voluntarily appeared to try the case before the

7  Magistrate Judge."  *Roell*, 538 U.S. at 589-90.

8       Watch Tower reads *Roell* broadly, but our circuit has construed it to mean "that voluntary

9  consent could be implied in limited, exceptional circumstances."  *Anderson*, 351 F.3d at 915.

10  *Roell* did not displace the "stringent requirement" that a "'clear and unambiguous expression of

11  consent is required to vest the magistrate with authority under subsection (c)'" of Section 636.  *Id.*

12  (quoting *Alaniz v. Cal. Processors, Inc.*, 690 F.2d 717, 720 (9th Cir. 1982)).  Darkspilver did not

13  make that clear expression.  To the contrary, he has consistently denied giving consent.  *See, e.g.*,

14  Dkt. No. 23 at 4; Dkt. No. 27 (Aug. 1, 2019 Hearing Tr.) at 5:7.

15       This case does not have any of the extraordinary circumstances that established implied

16  consent in *Roell*.  The Supreme Court found implied consent because the defendants had been

17  advised of their right to proceed before a district judge, had "stood silent" when the magistrate

18  judge repeatedly stated her understanding that all the parties had consented to her jurisdiction, and

19  remained without protest before the magistrate judge through a jury verdict in their favor.  *Roell*,

20  538 U.S. at 583-84 and n.1.

21       None of that happened here.  The record shows that Darkspilver's consent was never

22  confirmed or explored by the magistrate judge, and the docket does not indicate that he was ever

23  advised of the right to appear before a district judge via a consent-or-declination form, or any

24  other means.  *See Roell*, 538 U.S. at 591 and n.7.  The record is also devoid of any evidence that

25  might support an inference of consent on the basis of gamesmanship in "waiting for the outcome"

26  before contesting the magistrate judge's authority.  *Id*. at 590.

27

28

United States District Court
Northern District of California

7

1      Consequently, in the absence of express or implied consent by Darkspilver, magistrate

2  judge jurisdiction was never created under Section 636(c).  As a result, the order on the motion to

3  quash is best treated as a report and recommendation under 28 U.S.C. § 636(b)(1)(B).  *See Flam*,

4  788 F.3d at 1046-47; *Allen v. Meyer*, 755 F.3d 866, 869 (9th Cir. 2014).  The Court will review it

5  de novo, 28 U.S.C. § 636(b)(1), but would reach the same conclusions under the more deferential

6  review for a non-dispositive order, *id.* § 636(b)(1)(A).  The parties have had a full and fair

7  opportunity to file objections to, and argue for and against, the order.  *See id.* § 636(b)(1).

8  **II.      THE MOTION TO QUASH**

9      This case is all about copyright law rights and privileges.  The parties and the magistrate

10  judge gave substantial attention to Watch Tower's copyrights and fair use, but took on additional

11  complications raised by the application of the First Amendment to anonymous online speech.

12  This was not really necessary to address freedom of expression concerns because "copyright law

13  contains built-in First Amendment accommodations."  *Eldred v. Ashcroft*, 537 U.S. 186, 219-20

14  (2003).  The doctrine of fair use provides everything needed to balance the competing interests of

15  the First Amendment and the copyright laws.  *See L.A. News Serv. v. Tullo*, 973 F.2d 791, 795 (9th

16  Cir. 1992) (noting that "First Amendment concerns are . . . addressed in the copyright field

17  through the 'fair use' doctrine"); *Sarl Louis Feraud Int'l v. Viewfinder, Inc.*, 489 F.3d 474, 482

18  (2d Cir. 2007) ("[T]he fair use doctrine encompasses all claims of first amendment in the

19  copyright field." (internal quotation omitted)).  There is no need to go further afield, or to treat fair

20  use as an element in a broader First Amendment inquiry.

21      The anonymous speech approach was problematic for other reasons, too.  It is a developing

22  area where the standards are far from settled.  *See In re Anonymous Online Speakers*, 661 F.3d

23  1168, 1175-76 (9th Cir. 2011) (noting courts have "employed a variety of standards to benchmark

24  whether an anonymous speaker's identity should be revealed").  And the two-part test the

25  magistrate judge used was created in a context that did not involve the key elements of copyright

26  or the DMCA.  *See* Dkt. No. 18 at 8-9.  *Highfields*, the source of the test, involved claims

27  sounding in trademark and unfair competition, but not copyright law or fair use.  *See Highfields*,

28  385 F. Supp. 2d at 972.  *Art of Living Foundation*, which the magistrate judge also cited, had a

United States District Court
Northern District of California

8

copyright infringement claim among others, but the district court expressly declined to make a fair use determination.  *Art of Living Foundation*, 2011 WL 5444622 at *6.  The district court followed *Highfields* instead, although it acknowledged that a court "might consider fair use arguments raised in a motion to quash."  *Id*. at *7, *8 n.6.

While the *Highfields* test certainly has a role in some online speech cases, it is not well suited for a copyright dispute.  It begs the question to a degree because the First Amendment does not protect anonymous speech that infringes copyright.  *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) ("[T]o the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment.").  In addition, the test has no obvious place for the fair use inquiry.  The parties and the magistrate judge considered fair use in the context of balancing the harms, but a good argument can be made that it fits much better in determining whether there was a prima facie case of copyright infringement.  There is also the prudential consideration that courts should not pass on constitutional questions in the first instance when a case may be resolved on other grounds. *See Slack v. McDaniel*, 529 U.S. 473, 485 (2000).

Consequently, the Court sees no reason to tackle broad online speech issues when an analysis under copyright law and fair use will do.  Fair use "allows the public to use not only facts and ideas contained in a copyrighted work, but also expression itself in certain circumstances." *Eldred*, 537 U.S. at 219; *see also Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 432-33 (1984) (copyright law "has never accorded the copyright owner complete control over all possible uses of his work").  Congress codified four factors in the Copyright Act to guide the determination of fair use of copyrighted works.  In pertinent part:

> Notwithstanding the provisions of sections 106 and 106A, *the fair use of a copyrighted work*, including such work by reproduction in copies . . . *for purposes such as criticism, comment,* news reporting, teaching (including multiple copies for classroom use), scholarship, or research, *is not an infringement of copyright*. In determining whether the use made of a work in any particular case is fair use the factors to be considered shall include --
>
> > (1)  the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

United States District Court
Northern District of California

9

(2)  the nature of the copyrighted work;

(3)  the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4)  the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107 (emphasis added).

The key principle here is Congress's determination that fair use is not a mere defense to copyright infringement, but rather is a use that is not infringing at all.  As our circuit has concluded, the plain language of Section 107 means that "[f]air use is not just excused by the law, it is wholly authorized by the law."  *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1151 (9th Cir. 2016).  "'[A]nyone who . . . makes a fair use of the work is not an infringer of the copyright with respect to such use.'"  *Id*. at 1152 (alterations in original) (quoting *Sony Corp.*, 464 U.S. at 433). Fair use "is a non-infringing use."  *Id*.

Consequently, if the fair use inquiry demonstrates that Darkspilver is not an infringer of Watch Tower's copyrighted works, the subpoena must be quashed.  The only authorized purpose for the subpoena under the DMCA was to discover his identity as an alleged copyright infringer to protect Watch Tower's copyrights.  *See* 15 U.S.C. § 512(h)(2)(C) (requiring "a sworn declaration to the effect that the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under this title").  If Darkspilver establishes that he made fair use of the copyrighted works, no claim of copyright infringement could plausibly be alleged against him, and the subpoena would not be authorized under the DMCA.

The magistrate judge analyzed the fair use factors in Section 107, albeit in a balance of hardships context, and found that they all weighed in favor of fair use.  Dkt. No. 18 at 13-17. Because no copyright had been registered for the chart at the time of the subpoena, and other factors made its copyright status doubtful, the magistrate judge focused on the solicitation ad.  *Id*. at 11.  Among other determinations, the magistrate judge found that: (1) Darkspilver used the solicitation ad for the purposes of criticism and critical discussion, without profit or commercial gain; (2) the ad was an informational and functional, as opposed to creative, work that focused on

giving instructions on how to donate online; (3) it was a single page from the November 2018 Watchtower magazine, and thus a small portion of that copyrighted collective work; and (4) Watch Tower had not shown a meaningful likelihood of harm to the value of its work.  *Id*. at 13-17.

After a de novo review of the record and the parties' arguments, the Court concludes that Darkspilver made fair use of the Watch Tower documents.  This review was facilitated by the fact that the salient evidence is not meaningfully disputed.  The record is well developed, and neither side contends that any evidence material to the fair use inquiry is missing.  To streamline the analysis, the Court has assumed that Watch Tower perfected a copyright for the ad and chart before it requested the subpoena.  This arguably spots Watch Tower more than it is entitled to, given the questions about the copyright status of the chart, *see* Dkt. No. 18 at 11, but the assumption clears the deck of collateral technical issues in favor of the party opposing fair use.

The fair use factors in Section 107 are not intended to be applied in an isolated and mechanical way.  They should be explored and weighed together in light of copyright's purpose. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994).  Every application of fair use is different, and the inquiry must be made on the specific facts before the Court on a case-by-case basis.  *Id*. at 577.  The doctrine "permits [and requires] courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster."  *Id*. (internal quotation omitted) (alteration in original).

With respect to the first factor of the purpose and character of the use, the key question is whether the new use was "transformative," that is, whether the use added some new purpose or meaning to the original.  *Campbell*, 510 U.S. at 579.  There is no material dispute that Darkspilver used the ad and chart for criticism and commentary in a manner fundamentally at odds with Watch Tower's original purposes.  He put them on a forum expressly dedicated to criticism of Watch Tower by former members, succeeded in generating a number of comments from other users critical of Watch Tower, *see* Dkt. No. 8-3, and declared that his sole purpose was to criticize the organization and spark discussion about it, Dkt. No. 8-1 ¶ 9.

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1    This was a transformative use.  It is true that he copied the solicitation ad and chart largely

2    in their original and unaltered states, but physical changes are not required for a new use to be

3    transformative.  *See, e.g.*, *Katz v. Google, Inc.*, 802 F.3d 1178, 1183 (11th Cir. 2015) ("'The use of

4    a copyrighted work need not alter or augment the work to be transformative in nature.'") (quoting

5    *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 639 (4th Cir. 2009)); *Seltzer v. Green*

6    *Day, Inc.*, 725 F.3d 1170, 1177 (9th Cir. 2013) (work can be transformative with few physical

7    changes to or comments on the original).  What matters is that Darkspilver used the ad and chart to

8    express "something new, with a further purpose or different character, altering the first with new

9    expression, meaning, or message."  *Campbell*, 510 U.S. at 579.  The "something new" was

10   criticism of Watch Tower's fundraising and data collection practices, a quintessential fair use right

11   expressly protected by Section 107.  That use completely transformed the purpose and expressive

12   content of the ad and chart, regardless of whether their physical text was changed.  *See Swatch*

13   *Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 83 (2d Cir. 2014) ("Courts often find such

14   uses [of unaltered reproduction] transformative by emphasizing the altered purpose or context of

15   the work, as evidenced by the surrounding commentary or criticism."); *Kelly v. Arriba Soft Corp.*¸

16   336 F.3d 811, 818-20 (9th Cir. 2003) (use of exact copies of photographs as search engine

17   thumbnail images transformative because original use as fine art was altered).

18   There is also no serious dispute that Darkspilver did not use Watch Tower's works for a

19   commercial purpose.  He expressly declared that to be true, Dkt. No. 8-1 ¶ 9, and Watch Tower

20   has not proffered any evidence to the contrary.  Watch Tower makes a passing comment that the

21   Reddit posts might have boosted Darkspilver's status in social media, Dkt. No. 21 at 19, but that

22   suggestion is entirely conclusory, and Watch Tower never explains how posting some criticisms

23   of the Jehovah's Witnesses on a Reddit forum directed to former members could ever translate

24   into a profit-making enterprise for Darkspilver.

25   For the second factor, a plain reading of the ad and chart show that they were strongly in

26   the nature of functional and instructive documents.  They were factual works -- instructions on

27   how to donate online and a summary of potentially applicable European data laws -- that are light-

28   years away from the creative works at the core of copyright protection.  *Campbell*, 510 U.S. at

586; *Stewart v. Abend*, 495 U.S. 207, 237 (1990) ("In general, fair use is more likely to be found in factual works than in fictional works."); *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 563-64 (1985). In addition, the solicitation ad had been published before Darkspilver used it, which also weighs in favor of fair use under this factor. *See Kelly*, 336 F.3d at 820.

Under the third inquiry, the record shows that Darkspilver used a quantitative and qualitative amount of the documents proportionate to his message. *See Campbell*, 510 U.S. at 586-87 ("[T]he extent of permissible copying varies with the purpose and character of the use."); *Kelly*, 336 F.3d at 820-21 (9th Cir. 2003) (purpose of claimed fair use made it necessary to copy entire work, as copying less would reduce its usefulness). Whether the solicitation ad should be treated as a separate work, as Watch Tower now suggests, or as one page of a collected work, as it was copyrighted, Darkspilver copied what was reasonably necessary from it, and the chart, to make his criticisms and comments understandable. He did not help himself to an oversized portion of Watch Tower's works *vis-à-vis* his critical message.

The fourth factor looks at whether the new use has an effect on the potential market for or value of the copyrighted works. *See Seltzer*, 725 F.3d at 1179. This factor has been called the most important fair use element because it protects the incentive to create. *See Harper & Row*, 471 U.S. at 566; *Sony Corp.*, 464 U.S. at 450-51. Even so, a "use that has no demonstrable effect upon the potential market for, or the value of, a copyrighted work need not be prohibited" to protect that incentive. *Sony Corp.*, 464 U.S. at 450.

That is the situation here. To start, Watch Tower did not present any evidence to establish a potential market or value for the ad or chart. There is no dispute that the Watch Tower magazine is distributed to readers without charge, and that the chart was not published or distributed externally. In addition, Darkspilver's use of the ad and chart for criticism was fundamentally contrary to Watch Tower's purposes. There is no likelihood that this critical use could substitute for the originals and thereby harm their potential market or value. Watch Tower was not in the business of publishing or licensing its works to criticize its fundraising and data collection practices, which effectively removes "the very notion" of potential harm here. *Campbell*, 510 U.S. at 592. Watch Tower no doubt disliked, and was possibly offended by, Darkspilver's use of

United States District Court
Northern District of California

its works, but that does not satisfy the loss of value inquiry.  *Seltzer*, 725 F.3d at 1179.  The chart has the additional factor that Watch Tower did not obtain a certificate of copyright for it until after challenging Darkspilver's use.  That further undercuts any possibility of loss of value for the chart.  *See Katz*, 802 F.3d at 1184 ("Due to [plaintiff's] attempt to utilize copyright as an instrument of censorship against unwanted criticism, there is no potential market for his work.").

Rather than establishing a potential copyright market or value, Watch Tower speculates that the Reddit postings might have diverted visitors away from its website.  Dkt. No. 18 at 17; Dkt. No. 21 at 22-23.  That was the primary reason why the magistrate judge let the subpoena go forward.  Dkt. No. 18 at 17.

The point is not well taken.  To start, it runs counter to the principle of law that a diversion or suppression of demand from criticism is not a cognizable copyright harm.  There is a crucial difference between "'[b]iting criticism [that merely] suppresses demand [and] copyright infringement[, which] usurps it.'"  *Campbell*, 510 U.S. at 592 (brackets in original and quoting *Fisher v. Dees*, 794 F.2d 432, 438 (9th Cir. 1986)).  A parody, for example, can "kill[] demand for the original" without causing a copyright injury.  *Id*. at 591-92.

This makes the premise of Watch Tower's theory of harm doubtful as a matter of law.  Watch Tower also made no effort to adduce any facts that might have made its theory less speculative, such as evidence of reduced or changed website traffic after the Reddit posts were made.  Nor does Watch Tower explain how the posts were even capable of usurping copyright value.  This not a case where a bootleg copy of a work was pirated to capture sales the original creator should have made.  To the contrary, Darkspilver used the Watch Tower documents in a way entirely different from, and critical of, Watch Tower's use.

Overall, Watch Tower does not meaningfully dispute any of the fair use evidence in the record.  Instead, it offers the general challenge that the inquiry is "woefully premature" because fair use is an affirmative defense that can't be considered unless and until a complaint is on file.  Dkt. No. 21 at 18.  This is a surprising proposition given that Watch Tower was required to evaluate fair use before sending its take-down notice to Reddit, *Lenz*, 815 F.3d at 1153, and that Watch Tower and its attorney represented they had done that, *see* Dkt. No. 21 at 5; Dkt. No. 12

14

¶ 3.  They are not well situated to say now that the inquiry should wait.  In addition, Watch Tower has not demonstrated that it is missing any material evidence for the fair use analysis, or that it has been disadvantaged in any way by examining fair use for the motion to quash.

Watch Tower's position is also contrary to the law.  Our circuit has expressly held that calling fair use an affirmative defense "is a misnomer." *Lenz*, 815 F.3d at 1152.  Fair use is an authorized use, and consequently is "distinct from affirmative defenses where a use infringes a copyright, but there is no liability due to a valid excuse, e.g., misuse of a copyright." *Id*. at 1153.  Curiously, although these holdings are plain as day in *Lenz*, Watch Tower failed to acknowledge them in its briefs, even though it cited *Lenz* for other uses. *See, e.g.*, Dkt. 21 at 5, 23.

Watch Tower also suggests that Darkspilver has turned the motion to quash into an improper "religious inquiry" by referring to potential sanctions of shunning and disfellowship.  Dkt. No. 21 at 17.  Not so.  Watch Tower is perfectly free to organize its internal disciplinary practices as it sees fit, without interference from the courts. *See Paul*, 819 F.2d at 879-80.  As this order makes clear, those considerations play no role whatsoever in the fair use analysis, and the Court has not relied on them for any of the findings here.  They are a non-event for purposes of this order.

For the sake of completeness, the Court also rejects Watch Tower's suggestion that Darkspilver waited too long to oppose the subpoena.  Watch Tower refers to a deadline for objections under Rule 45, *see* Dkt. No. 21 at 9, but that applies only to the person commanded to respond to the subpoena.  Fed. R. Civ. P. 45(d)(2)(B).  That was Reddit, to whom the subpoena was directed.  Darkspilver was permitted to move to quash in a "timely" fashion, *id*. 45(d)(3), which he did.

## CONCLUSION

The record establishes that Darkspilver made fair use of the Watch Tower ad and chart.  Consequently, he did not infringe Watch Tower's copyrighted works, and there is no basis in the DMCA for a subpoena to compel disclosure of his identity.  This is not a matter of limiting disclosure to outside counsel only, but that disclosure is not permitted at all under the law.  The

United States District Court
Northern District of California

1    motion to quash is granted.

2        **IT IS SO ORDERED.**

3    Dated:  March 2, 2020

4

5    _____

6    JAMES DONATO
     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California